R. S. CRAWFORD, Administrator, Appellee, v. B. W. McELHIN-NEY et al., Appellants.

**NEGLIGENCE:** Automobile Accident—Evidence. Evidence reviewed
1   and held to support a finding that defendant was negligent in the handling of an automobile in a crowded public street.   .

**NEGLIGENCE:** Automobile Accident—Wife as Employee of Hus-
2   band—Negligence of Wife—Liability of Husband. A wife engaged in the transaction of the business of the husband or the business of both of them, though only for their mutual pleasure, is the agent and employee of the husband, with consequent liability of the husband for the negligence of the wife. So held in an automobile accident.

    PRINCIPLE APPLIED: A husband, two months before the accident in question, bought an automobile for the use and pleasure of both himself and his wife. He never had any driver but his wife. She used the machine on such trips as she cared to take. He accompanied her when he cared to do so and often when she requested him to do so. He invited guests to accompany them. Evidently he paid the expense of the trips. On the occasion in question, he was present at the suggestion of the wife on a sight-seeing trip to a fair and permitted the wife to operate the car. She ran the car over deceased. *Held,* the wife was the agent and employee of the husband, with consequent liability on his part for her negligence.

**MUNICIPAL CORPORATIONS:** Congested Street Crossings—Right
3, 5   to Use—Duty to Choose New Route—Negligence. There is no arbitrary right to use at any and all times and under any and all circumstances all parts of a public street. Circumstances, and ordinary prudence in view thereof, are an ever-present limitation on the right. Circumstances often demand a stop and even a turning aside and the choosing of another route. So

held where defendant drove an automobile across a congested street crossing.

NEGLIGENCE: "Common Enterprise"—Husband and Wife. A husband and wife, engaged in a pleasure trip with invited guests and with an automobile owned by the husband and under his control but driven by the wife, are pursuing a "common enterprise."

     PRINCIPLE APPLIED:   (See No. 2.)

MUNICIPAL CORPORATIONS:   Congested Street Crossings—Right to Use—Duty to Choose New Route—Negligence.

NEGLIGENCE:   When Negligence Will Be Imputed. The negligence of the driver of a conveyance will be imputed to one riding with the driver (a) when both parties are engaged in a common enterprise, and (b) where the driver is engaged in an enterprise for the use and benefit of the other party or in the employ or under the control and direction of such other party, whether such other party exercises his power of control or not.

VERDICT:   Death of Child—$3,300. Verdict of $3,300 for death of an eight-year-old child of ordinary ability sustained.

*Appeal from Wright District Court.*—HON. C. G. LEE, Judge.

MONDAY, OCTOBER 4, 1915.

THIS action was brought by the administrator of the estate of Eicel June Crawford, a minor about eight years of age, to recover damages under the allegations that her death was caused by her being struck, while walking on a street crossing in Clarion, Iowa, by the automobile of the defendant, B. W. McElhinney, while it was being driven by his wife by his authority, direction, and with his consent. There was a trial to a jury which resulted in a verdict in favor of plaintiff and against both defendants for $4,000. The verdict was reduced by the trial court to $3,300 and judgment therefor entered. Defendants appeal.—*Affirmed.*

*Nagle & Nagle* and *Birdsall & Birdsall,* for appellants.

*Peterson, McGrath & Archerd* and *Kelleher & O'Connor,* for appellee.

PRESTON, J.—The collision happened September 5, 1912, at about five o'clock in the afternoon, while plaintiff's intestate was proceeding northward across Main Street. The line being traversed is marked ''cross walk'' between the First National Bank and the Lockwood store, on the plat here set out.

### PLAT EXHIBIT "A."

The defendants in the automobile came from the north, and the accident occurred while the automobile was turning the corner from Lake Street into Main Street, going westward.   Deceased died a few hours after being hurt.   It is alleged that on said date a county fair was being held at Clarion, and in connection therewith an amusement program, largely advertised, was being given, all of which brought a large assembly of people; that the traveled portion of the streets was congested with horses, buggies, and automobiles, and the sidewalks and street crossings with pedestrians, among whom were a large number of children; that, at the time of the accident, there was in operation on Main Street an amusement game known as "Nigger Dip," which had attracted a large collection of people in and about the street and the crossing at the intersection of Main and Lake Streets and along the line of the west side of Lake Street.   The grounds of negligence alleged are:

"(1) In failing to have said automobile under sufficient control to stop the same before driving the car against, upon and over said child, in that the defendants failed and neglected to disconnect the engine and apply the brakes sufficiently to immediately stop said car;

"(2) In failing to stop said car before driving the same against, upon and over said child;

"(3) In failing to see and observe the peril of said child upon said crossing, and in driving the car against, upon and over said child notwithstanding her obvious position, surrounding conditions, and peril at the time of the accident;

"(4) In failing to stop said car after driving against and upon said child before she was dragged and crushed under the wheels;

"(5) In failing to drive and operate said car at the time and place of the accident at such speed and under such control as to enable the driver to immediately stop the same in case of peril or danger to foot passengers;

"(6) In failing to operate the machinery providing for the immediate stopping of said car at the time and place of the accident in a careful and skilful manner;

"(7) In driving said car at the time and place of the accident at such rate of speed and in such a manner as to prevent its being immediately stopped at the control of the driver;

"(8) In driving said car at the time and place of the accident through a crowded street and over a crossing congested with standing people, near by an amusement game in operation, where only a small opening was left through which it was possible to drive, under such power and rate of speed as prevented the immediate stopping of said car in case of peril or danger to foot passengers therefrom;

"(9) In attempting to turn the car at the intersection of Lake and Main Streets and drive over said crossing at the time and place of the accident, when, before turning said car at right angles from the direction it was going, it was obvious to see the conditions existing at, upon and about said crossing; that an amusement game known as 'Nigger Dip' was in operation near thereto in the street immediately west of said crossing, that said crossing and street at the place of the accident was congested with standing persons watching said amusement game, and with foot passengers returning from the county fair passing over said crossing, that the congested and crowded condition was such that at said time and place standing persons and foot passengers, among whom were many children, were constantly upon said crossing and all portions thereof, and when it was known to the defendants that there were other crossings and streets not so congested that might have been used by them in driving to their destination."

The defendants filed their separate answers, denying generally all the allegations in the petition.

At the close of plaintiff's evidence and again at the close

of all the evidence, a motion was made to direct a verdict for Mrs. McElhinney on the ground that the evidence fails to show that she was negligent in the operation of the automobile, and because the evidence shows that the accident was caused by the deceased carelessly, suddenly and negligently turning and walking in front of the moving car so that defendant was unable to stop the car in time to avoid the accident. A similar motion was made in behalf of the defendant B. W. McElhinney, on the ground that he is not liable for the torts of his wife. The rulings on these matters, among others, are assigned as error.

1. NEGLIGENCE: automobile accident: evidence.

We shall take up first the question as to whether there was evidence justifying the submission of the case to the jury on the question of the negligence of Mrs. McElhinney. Evidence was introduced on behalf of defendants from which the jury could have found that, at the time of the accident, Mrs. McElhinney was driving the car slowly, not more than four or five miles an hour; that as she approached the sidewalk she saw a boy and girl standing on the cross walk to the left of the car; that she blew her horn and the boy passed along the walk to the north, but the deceased remained standing on the walk and turned towards the south, probably attracted by the amusement on the south side of the street; that there was room for the car to pass over the crossing if the girl had remained where she was, but that, just as the car got on the crossing, she turned and started north and walked in front of the car; that at that instant Mrs. McElhinney disengaged the clutch and applied the brakes, but was not able to stop the car in time to avoid the accident; that the little girl was knocked down and passed between the front wheels and was caught by the left hind wheel, which was sliding, and which pushed her about two feet before the car was stopped; that to disengage the clutch and apply the brakes is all that can be done to stop a car; that the car was properly equipped with brakes, which were in good condition at the time of the accident.

Such was the general nature of the evidence introduced by defendants and, had the jury found for the defendants, such a finding would have had sufficient support. But there was other evidence in the case, from which the jury could have found that the facts were not as claimed by defendants. We shall not attempt to set out the evidence in detail, but enough to show that there was a conflict in the evidence for the determination of the jury. Plaintiff's evidence tended to show, and the jury could have so found, that the crossing on which deceased was walking at the time she was struck is a cement crossing six feet in width, and elevated above the surface of the ground, east of it, from two to three inches; that the crossing has a slightly rounding surface; that Main Street, west from the crossing, has a fall of two feet and one inch in a distance of twenty-one feet; that the streets were not paved and the street and dirt were dry; that the intersection of Main and Lake Streets is in the central and thickly settled portion of the town. While there is a conflict in the evidence on the question, there is evidence of several witnesses that, at this intersection and on both sides of the crossing, including the crossing itself, several people were congregated and a large number of people were assembled in that vicinity. One witness says that there were as many as a dozen or fifteen people on the crossing itself; some of defendants' witnesses testify that the sidewalks in the vicinity were thickly covered with people; another witness says, "The street was practically full from Lockwood's up half of the way—standing on the sidewalk and to the west of the sidewalk; that street was full;" there were many children among the people; witnesses say that there was some noise on the south side of the street, some confusion there; "hollering and laughing was going on among the crowd." Under these circumstances, the car in question came from the north and turned west across the cement crossing, striking deceased where she was on the cement walk. There was evidence that the car, in passing over the cement crossing, was a little to

the north of the center of the street at the time it struck deceased. The evidence is in conflict as to whether deceased hesitated and stopped before she was struck. Some witnesses say that she did so, while others say "She did not stop and stand still; she was coming right along." Some of the witnesses say that her face was turned a little to the west, others that she seemed to be turning and looking to the southwest. Mr. McElhinney states that he thinks her face was turned to the north, but says he does not remember that she turned her face toward the car at any time before the accident. Mrs. McElhinney says, "I knew and felt that her attention was attracted to something else as I saw her standing there. She moved about two feet and was struck." Witnesses say that deceased did not notice the car until it got upon her and then it was too late. Just before her death, deceased said she did not see the car before it struck her. The evidence is in conflict as to whether another car preceded defendants' car over this crossing. There was evidence that the driver of the car could readily see deceased on the crossing for a distance of twenty or twenty-five feet, and could have seen, and in fact did see, deceased on the crossing and knew of her position; that there was nothing between the car and the little girl to obstruct the line of vision of the driver. The defendant B. W. McElhinney testifies that before she was struck, the little girl hesitated just a mere second and took a couple of steps after she stopped, before the car hit her; and that when she stopped, she was south of the line of the car two or three feet, and that when she stopped, the car was east of her from twenty to twenty-two feet. Several witnesses say that deceased was struck and knocked down by the front end of the car, but in such a way as not to be struck by either of the front wheels. There was evidence from which the jury could have found that the car, from the time it struck the little girl, traveled forty feet or more from the point of collision, though there is a conflict at this point. Some of defendants' witnesses say that when the car was finally stopped, the rear end of it was

from twelve to fourteen feet from the west line of the cross-
ing. The car was twelve to thirteen feet long, and this would
show that the car traveled a distance of twenty-three to
twenty-four feet. Plaintiff's witnesses make this distance
more. Some of them say the rear of the car was thirty feet
from the west line of the crossing and this, added to the length
of the car, would make about forty-three feet. So that if the
driver of the car could and did see deceased on the crossing
when twenty to twenty-five feet east of the crossing, the car
would have traveled about sixty-eight feet after the driver
saw and knew, or should have known, of the position of peril
of the little girl. The evidence was such that the jury could
have found that the car was being driven at an excessive rate
of speed under the circumstances; one witness states that the
car was running eight or ten miles an hour, another five miles;
defendants' witnesses say about four miles. Even if the rate
of speed should not be regarded as excessive, the jury could
have found from the evidence that, after the position of the
little girl was known or should have been known by Mrs.
McElhinney, she failed to exercise proper care to stop or
divert the course of the car. As before stated, there was evi-
dence that the car traveled about forty feet after the girl was
knocked down before it was stopped, and there was evidence
that the rear wheel of the car remained in contact with the
body of the child and pushed her along in front of the wheel
eight or ten feet; other witnesses say that she was pushed
two or three feet. There was evidence that, going at the rate
of eight or ten miles an hour, the car could have been stopped
at this crossing, and, under the circumstances, within a dis-
tance of four feet; if going at five miles an hour, it would
not have gone more than two feet, and at four miles, even
less; witnesses give their estimate as to the length of time it
would take to release the clutch and make an application of
the brakes, some of the witnesses claiming that it would take
four or five seconds to make an application of the brakes,

while plaintiff contends that it could be done instantly, had the driver had her foot on the brake; and there is evidence that it could be done in a fraction of a second; as one witness puts it: "If you are ready you can do it a good deal quicker than five seconds, but if you are not ready you can't." Under the circumstances here shown, the driver should have been ready. Evidence for defendants is that the wheels were locked and sliding, but there is evidence that an obstruction in front of one of the wheels would cause the wheels to slide even though the opposite wheel is not sliding and where the brake has not been applied. An eyewitness says that he knows the wheels didn't slide all the distance, but that in his opinion they slid four or five feet. There is evidence that, with a car running five miles an hour and with such an application of the brakes made as to lock the wheels, they would not go three feet if the clutch is off; that such circumstances would indicate that the clutch had not been disengaged and that the engine was fighting the brake. Plaintiff contends that though there is evidence that the driver pressed her foot on the clutch so as to disengage the engine, the fact that the car moved the distance it did, at the rate of speed, if the brakes were on, indicates that the driver had not disengaged the engine. Mrs. McElhinney admits that she did not have her foot on the brake just before deceased was knocked down; for she says: "I had one foot on the clutch, and the other foot on the accelerator, but I was not pressing it." She says she did not press her foot on the brake until, as she puts it, the child turned in front of the car.

Defendants' witness Eyler states that he was standing on the edge of the sidewalk south of the First National Bank; that he saw the car strike the child and that it was probably eight or ten feet from where he stood to the car as it crossed over the crossing; that, as the car struck the girl, he jumped for the car, reached its side, and asked Mrs. McElhinney if she could stop the car. He says: "I grabbed the car in my

excitement and desperation. I grabbed the car myself." All this occurred after the child was struck and before the car stopped. He says that the car had run about its length from the time it struck the girl until he asked Mrs. McElhinney if she could stop it. He says further that the child was seven or eight feet west of the crossing and the rear wheel first caught her and that the wheel dragged her eighteen inches or two feet. Under the evidence, if the car had been stopped within the distance in which the evidence shows it could have been stopped, the child would have been saved; at least it was a question for the jury. From these circumstances, it was for the jury to say whether Mrs. McElhinney had the car under proper control. Other circumstances may properly be noticed in this connection. Mrs. McElhinney says that the child moved only a couple of feet before she came in front of the car, and there is evidence for plaintiff that when the child was struck she was north of the center of the car, and the jury might well have found that, while the child was upon the crossing, she was immediately in front of the car, or so near the line of its passage as to make her position one of peril. As before stated, Mrs. McElhinney says she knew and felt that the child's attention was attracted to something else while standing there. Plaintiff contends that defendant was negligent in even approaching the crossing, with deceased standing on the crossing with her attention diverted, and the jury might well have so found. As stated, there is a conflict in the evidence as to the exact position of the little girl and the direction in which she was looking, and as to whether she had stopped or was coming right along.

We may have set out the evidence more fully than necessary, but we have not given all the details of the evidence for either side. Enough has been set out to show that there was a jury question as to the alleged negligence of Mrs. McElhinney.

2. It is contended for defendant B. W. McElhinney that, under the statute, Sec. 3156, Code, he is not liable for the

torts of his wife except in cases where he would be jointly
liable with her if the marriage relation did
not exist; and that the evidence fails to show
that the relation of master and servant
existed between the defendants; and that,
therefore, the husband is not liable for the
negligence of his wife, if she was negligent. He contends that
the doctrine of *respondeat superior* applies only when the rela-
tion of master and servant is shown to exist between the
wrongdoer and the person sought to be charged for the result
of some negligence or wrong at the time, and in respect to
the very transaction out of which the injury arose. He claims
that at the time in question he was merely the guest of his
wife and made the trip only upon her invitation; but we are
of opinion that, under the evidence, it was a question for the
jury, if, indeed, the evidence is not undisputed that Mrs. Mc-
Elhinney was the servant and agent of her husband, and
that they were engaged in a common enterprise.  Mr. Mc-
Elhinney owned the car and had owned it since July, 1912;
he testifies that, since he became the owner of the car, he has
had no other driver than his wife.  On cross-examination, he
says that this trip was ''purely a pleasure trip for me and
her; she could go on such trips as she wanted to make, when
I was not along, and whenever I wanted to go or she wanted
me to go with her, we would go together, and she would do the
driving in both instances.  I went on this trip at her sug-
gestion.  It was done upon my own volition and upon her
suggestion that she would like to have me with her.  I looked
at the Fair myself and acted kind of independently after I
got to the Fair grounds.''  Mrs. McElhinney says: ''Mr.
McElhinney never operated the car.  I have done all the driv-
ing of our car.''  It appears from the evidence that Mr.
McElhinney was so far in charge of the trip in question as
to personally invite the guests who accompanied them.  Mr.
Palmer testifies:  ''Mr. McElhinney invited me and my wife
to ride over with them.''  Mr. Palmer and his wife were in

2. NEGLIGENCE:
automobile ac-
cident: wife
as employee
of husband:
negligence of
wife: liability
of husband.

the car with defendants at the time of the accident. . Mr.
McElhinney does not claim that he did not bear the expense
of the trip; he was present at the time and permitted his wife
to operate the car on this trip. The mere fact that he trans-
acted no business does not argue that he was not engaged with
his wife on the trip in question for their mutual pleasure.
The case is not like *Reynolds v. Buck,* 127 Iowa 601, *Hartley
v. Miller,* (Mich.) 130 N. W. 336, where the son or relative
of the owner of a car is engaged in his own business and
pleasure and not in any manner connected with the owner's
employment or business, and without the knowledge or con-
sent of the owner, and when the owner is not present (see
also *Symington v. Sipes,* (Md.) 47 L. R. A. (N. S.) 662 and
note), or where the borrower of a car is using it in his own
business exclusively.

It is not contended by plaintiff that the husband is re-
sponsible for the negligence of his wife because of the mar-
riage relation, but because of the nature of the work she was
doing, and because the trip was being taken for their mutual
pleasure, in his car. It is not contended by defendant that
the wife may not be an employee or agent of her husband.
It is doubtless true that the mere existence of the relation
of husband and wife will not create the relation of master
and servant, or agent on the part of the wife, so as to render
the husband liable for negligence in operating his automobile;
but here there are other circumstances. It is further shown
that the wife acted as the chauffeur of the car bought by the
husband for the use of both of them, and in the particular
instance it was being used for the mutual pleasure of both.
In the instant case, if defendants were engaged in a common
enterprise, or if Mrs. McElhinney was the employee and agent
of her husband at the time in the use of the car by his
authority, for some purpose for which the car was bought
and kept by him, they would both be liable for her negligence
in such use. In *McNeal v. McKain,* (Okla.) 41 L. R. A.
(N. S.) 775, and note, the cases are collected as to the lia-

bility of the owner of an automobile used by a member of his family. As to third persons, a minor child may become, by particular arrangement, the servant of the father, and this without agreement for compensation. *Parker v. Wilson,* (Ala.) 60 So. 150. The wife may be the agent or employee of her husband. The evidence of defendant is such as to show that at the time in question his wife was in his employ, in the sense that she was engaged in the transaction of his business or the business of both. Apparently he bought the car for the pleasure of his family, which included both his wife and himself. He had no other driver. We think there was no error in overruling the motion of defendant B. W. McElhinney for a directed verdict on this ground. As bearing upon this question, see the following cases: *Plöetz v. Holt,* (Minn.) 144 N. W. 745; *Carpenter v. Auto Co.,* 159 Iowa 52; *Chamberlain v. Brown,* 141 Iowa 540; *Kayser v. Van Nest,* (Minn.) 146 N. W. 1091; *Stowe v. Morris,* (Ky.) 144 S. W. 52; *Daily v. Maxwell,* (Mo.) 133 S. W. 351; *Smith v. Jordan,* (Mass.) 97 N. E. 761; 21 Cyc. 1237; 28 Cyc. 38; 2 R. C. L. 1198-1199.

3. The next assignment of error is that the court erred in refusing to withdraw from the jury each of the assignments of negligence charged in paragraphs 1, 3 and 8 of the petition, on the ground that there was no evidence to sustain such grounds of negligence. We have set out enough of the testimony to show that there was evidence sufficient to submit these propositions to the jury.

4. The refusal of the instructions offered by defendant and some of the instructions given by the court are criticized. Instruction number 8, requested by defendant, relates to the care required of deceased and of the driver of the car. Instruction number 12, given by the court, and of which no complaint is made, is a literal copy of offered instruction 8 except one clause, and that is at the point where the court said to the jury, "if they found according to defendants' theory of the evidence that

3. MUNICIPAL CORPORATIONS: congested street crossings: right to use: duty to choose new route: negligence.

defendant observed the child in that attitude and that 'there was then an opportunity for her (defendant) to pass over the crossing with apparent safety with the automobile.' " For the quoted words, the court substituted the following: "acting as a reasonably prudent person under the circumstances, she believed she could pass over the crossing in safety with the automobile." We have attempted to give the sense of the alteration without setting out the two long instructions in full. We think the modification is correct. After noticing the position of the child, the defendant would not be justified in proceeding unless a reasonably prudent person would have proceeded under the same circumstances.

5. Instructions 3, 5 and 6, offered by defendants, relate to the liability of B. W. McElhinney for the negligence of his wife. We think that, under the undisputed evidence and the admissions of defendants, they were engaged in a common enterprise, and that Mrs. McElhinney was the agent and employee of her husband. But the court submitted the question to the jury. We think the matter referred to in the requested instructions just mentioned is covered by instructions 8 and 9 given by the court, which are in harmony with the views we have expressed in a prior paragraph of this opinion, and are as follows:

4. NEGLIGENCE: "common enterprise": husband and wife.

## VIII.

In this case it appears from the uncontradicted evidence that the automobile in question was being handled and operated by the defendant, Mrs. B. W. McElhinney. You cannot find the defendant B. W. McElhinney liable under the evidence in this case without finding that his co-defendant was negligent in some of the respects charged in plaintiff's petition, and that the plaintiff has established, by a preponderance of the evidence, the other material allegations of his petition against the said Mrs. B. W. McElhinney; but if you find the said defendant, Mrs. B. W. McElhinney, liable

in this case and you further find, by a preponderance of the evidence, that the said defendants, at the time of the matters complained of, were engaged in a common enterprise, or that the automobile in which the defendants were riding was under the control of the defendant B. W. McElhinney, then you will find that the negligence, if any, of Mrs. B. W. McElhinney was the negligence of the defendant B. W. McElhinney, and in such case, if either defendant is liable, both will be. If, however, the defendants were not engaged in a common enterprise, or the defendant B. W. McElhinney did not have any control over the use of the car in question, but was a guest therein, then the negligence of defendant Mrs. B. W. McElhinney, if any, could not be imputed to him and he would not in any event be liable in this case.

## IX.

In determining whether or not the defendant Mrs. B. W. McElhinney, in driving the car in question, was under the control or in the service of the defendant B. W. McElhinney, at the time of the injury complained of, you will consider that the relation of master and servant cannot be predicated or arrived at alone from the relation of husband and wife; nor can the same be presumed merely from the fact that he was the owner of the automobile which she was driving at the time. The fact that the defendants were husband and wife and that he was accompanying her in the automobile and was the owner thereof will not alone justify you in finding that she was under his control at the time of the alleged injury; but such facts are proper to be considered by you in connection with all the other facts shown in evidence in determining whether or not the defendants were, at the time of the accident, pursuing a common purpose, or whether or not the defendant B. W. McElhinney did participate in the control of the use of the car at such time.

The criticism of instruction number 8 above quoted is the use of the words therein, ''that the said defendants, at the time of the matters complained of, were engaged in a common enterprise.'' It is said that the word ''enterprise'' is a broad one, and ordinarily applies to a business transaction; but what has been said in a prior division of the opinion on this subject disposes of this criticism. The criticism of the words ''whether or not the defendants were at the time of the accident pursuing a common purpose'' is answered by what we have just said in regard to similar language in number 8.

6. Instruction number 6, given by the court, is as follows:

''You are instructed that the rights of travelers upon the streets or highways are mutual and co-ordinate; each has a right of passage; and in this case you are instructed that the defendant could rightfully use the

5. MUNICIPAL CORPORATIONS: congested street crossings: right to use: duty to choose new route: negligence.

street and pass over the street crossing where the accident occurred with the automobile, notwithstanding there was a number of people congregated on the street at the end of the crossing and notwithstanding people were crossing the street upon the street crossing, provided that in so doing the defendant exercised due care and caution in the management of the automobile. The defendant was not obliged to turn around and seek another crossing or street to pursue her journey if, in the exercise of due care on her part, she could use this crossing without injury to others. But if it was imprudent or dangerous to use said crossing at said time, then ordinary care would require defendant to stop the car or seek another crossing.''

Defendants' requested instruction number 7 is in the same language as number 6, above set out, except that the court added the last three lines, or last sentence, as above set out; of this addition defendant complains. The thought included in the addition is a correct view of the rule of law

involved.· West v. Ward, 77 Iowa 323-325. The instruction in the form requested was partial to some extent to the defendant, and by the addition, the court simply states the reverse side of the argument. This instruction, with the addition, should be considered in connection with other portions of the court's charge, including paragraphs 7 and 2. In 7, the jury were told that the happening of the accident did not authorize them to find negligence, and in instruction 2, the jury were informed as to what must be established in order that plaintiff might recover. The instruction criticized does not relate to the issue of negligence to be determined by the jury. In other portions of the charge, the jury were instructed that they could find the defendants negligent only in case they found plaintiff had proved one or more of the three charges of negligence included in the petition, and the use by the defendants of this crossing. In the other instructions, the defendants' failure to use some other street is not embodied within these charges of negligence. The defendants complain of instruction number 1, requested by plaintiffs and given. That part of the instruction criticized is copied literally from the case of Carpenter v. Campbell Auto Co., 159 Iowa 52, 62, · where we said:

6. NEGLIGENCE:
when negli-
gence will be
imputed.

"In every case in which it is held that the negligence of the driver cannot be imputed to the party riding with him, an exception is always made to the effect that where they are engaged in a common enterprise, or where the driver is in an enterprise of any kind for the use and benefit of the party charged, in his employ, or under his control, or where the instrumentality used is under the control and direction and owned by the party charged, and where he has a right to control and direct it, whether he exercises that right or not, he is held for the negligence of the driver. Under the record made in this cause, the court rightly overruled defendant's· motion for an instructed verdict."

The case of *Hartley v. Miller*, (Mich.) 130 N. W. 336, relied upon by appellant, is distinguished in the *Carpenter Case*.

7. Lastly, it is urged by defendants that the verdict as reduced by the trial court is excessive, and they cite *Farrell v. Railway Co.*, 123 Iowa 690. In that case, a verdict for $3,000 for the death of a child eight years of age was held not to be excessive. The testimony shows that, in this case, the deceased was about eight years of age and that she was an ordinary child, possessed of ordinary ability for her age. The expectancy of one of that age is forty-nine years. There can be no fixed rule in such cases, and in view of the fact that the trial court reduced the verdict to an amount so near the amount which was allowed to stand in the *Farrell Case*, we do not feel justified in a further reduction.

7. VERDICTS: death of child: $3,300.

The case appears to have been carefully and ably tried by both the trial court and counsel for the parties. We discover no prejudicial error, and the judgment is therefore— *Affirmed*.

DEEMER, C. J., WEAVER and EVANS, JJ., concur.