## Stowe v. Morris, By, et al.

(Decided March 6, 1912.)

### Appeal from Christian Circuit Court.

Automobiles—Negligent Operation by Son of Owner—Injury to Child on Bicycle—Liability of Owner of Automobile.—The appellee, a child twelve years of age, while riding on a bicycle on the highway was run down and dragged by an automobile, the property of the appellant which at the time was being operated by appellant's son in taking his sister and some visiting ladies a pleasure trip. In an action by the child against the father of the son who was operating the automobile for damages, Held, that the father had provided his family with this car as a means of recreation and amusement, and the son in the use of the car was not performing an independent service of his own, but was carrying out what, within the spirit of the matter was the business of the father, and for this reason the father was liable for his son's act, and a verdict for $2,000 in damages is affirmed.

JOHN T. EDMUNDS, SOUTHALL & SON and HENRY J. STITES for appellant.

C. H. BUSH, W. T. FOWLER for appellees.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

The appellee, Houston Morris, a child some twelve years of age, in June, 1910, while riding a bicycle, was run down and dragged by an automobile, the property of R. T. Stowe. Both the child's legs were broken, and other injuries were inflicted on him. To recover damages he brought his action against the owner of the automobile. The jury brought in a verdict in the child's favor for $2,000; and from the judgment on the verdict this appeal is prosecuted.

It suffices to say that there was sufficient evidence before the jury to take the case to them upon the question of the negligence of the driver of the automobile. No serious complaint is made upon this feature of the case; nor is it seriously contended that the damages were excessive, or that there was any error in the admission or rejection of testimony. There is but one question of consequence in the record, and we proceed directly to its discussion.

The car, at the time of the accident, was driven by Robert Stowe, the eighteen year old son of the appellant. With him in the car were his sister, Miss Kathleen Stowe, a Miss Henry, who was his first cousin, and a couple of other young ladies who were friends of his sister. Young Mr. Stowe was a deputy in the office of his father, who was the county court clerk of Christian County; but on the day of the accident young Stowe had been to the office, and finding nothing to do had left without seeing his father. Indeed, he had not seen him at all on that day, as the young man did not arise for breakfast. The father gave him no orders about the use of the car on that day, nor had anything passed between them on that day as to the son's permission or right to use it. He went for the car of his own volition, and at his suggestion his sister and the other young ladies arranged for and went on the ride with him. The car was kept by the father for the comfort and pleasure of his family, including his son and daughter. They had the right to use it as often as and when they liked. The father knew how to run the car, but the son generally acted as the driver. The son himself testified that he took his sister driving when he felt like it, and when he did not feel like it his father drove the machine; that he took her driving when he wanted to; that he took his mother if he wanted to go; and that the machine was used by the family for the pleasure of the family. The father testified that the young man operated the car with his permission, and had the authority and right to use it when he wanted to; that his daughter had the like right; and that it was used as a family vehicle. This brief statement gives a fairly clear understanding of the ownership of the car, its uses, and the relationship of the parties to it, and of the father and son to each other in the use of the car. This brings us to the question in the case, i. e., was the son, under the facts stated and at the time of the injury, a servant or agent of the appel-

lant? If he was, his father is liable. If he was not, his father is not liable.

In the first place it may be said that a considerable part of the discussion of counsel is addressed to the idea that, even though the son were generally the agent or servant of the father in the operation of the car, the father is not liable under the facts stated here, because the son was engaged at the time in an enterprise of his own, the seeking and giving of pleasure to himself, his sister, and their friends, upon an excursion of his own, in which the father had no interest, and which was not in the line or scope of the son's employment. The question ordinarily is a vital one in cases of this character; but it is of no consequence here. For the only ground upon which the father can be held answerable for this act of his son excludes the idea of an independent venture, under the facts detailed. That ground is, as contended for by the appellee, that the machine was bought and operated for the pleasure of the family; that, at the time of the accident, the son was engaged in carrying out the general purpose for which the machine was bought and kept; and that, as he took it out at the time, in pursuance of general authority from his father to take it when he pleased, for the pleasure of the family and himself as a member of it, the purpose for which it had been bought, he was engaged in the execution of his father's business; i. e., the supplying of recreation to the members of the father's family.

In order that our statement may be clear, we again repeat that this is the only basis upon which it is possible to predicate the recovery against the father in the case at bar; for it is established generally that the father is not liable for the torts of the son, committed without his knowledge or authority, express or implied. Nor is it charged in the present case that the father had turned the son loose with a dangerous agency; so that the question of whether that state of fact, if proven, would have rendered the father liable, is not before us. There is the single question stated. We find that the principle has been a good deal discussed in the different States within the few years that motor vehicles have been in current use. The courts are not in harmony. The question is largely a new one in Kentucky; and we have endeavored to arrive at a correct answer, based upon precedent and upon the general principles of law which affect or are ancillary to a just exposition of the law.

The spirit of our determination, it may be remarked, is founded upon a Kentucky case, which, though cited but rarely in later Kentucky cases, has been largely cited in the cases from other States, in the text books and in the general authority upon the subject. The case is that of Lashbrook v. Patten, 1 Duv., 317. In this case the appellant's minor son, whilst driving, with his father's approbation, the latter's carriage and team, conveying the son's two sisters to a picnic, negligently ran against the carriage of another. An action was brought against the father for the damage. This court said that "the son must be regarded as in the father's employment, discharging a duty usually performed by a slave, and, therefore, must, for the purposes of this suit, be regarded as his father's servant." The opinion commented upon the fact that the occupants of the carriage were the members of the father's family, and that the journey to the picnic, which, of course, was purely in the pursuit of pleasure, was undertaken with the father's approbation. In the case at bar the journey was a journey in pursuit of pleasure, of which at least two members of the father's family were the beneficiaries. There had been, it is true, no express consent for the particular journey; but the consent was broader, for it was a consent so general as that it embraced any time and any journey for which the pleasure-seeking young members of the family might see fit to use the car. In consonance with the Kentucky authority named, enlarging the discussion and applying the same principles to the modern automobile instead of the carriage, the case of Daily v. Maxwell, et al. (Mo.), 133 S. W., 351, decided in January, 1911, upon facts largely similar to those proven in the case at bar, establishes the liability of the father. It is interesting to observe the facts in that case and the conclusions reached, as a growth from the Kentucky case. Mr. Maxwell relied upon his son, a boy of sixteen, to perform the duties of chauffeur to the family. At the time of the accident from which arose that litigation the son had asked and obtained the consent of the elder Maxwell to take some of his young friends— three girls and a boy—automobile riding. It was the boy's party and the father had naught to do with it except to give his consent to the use of the car for the pleasure of his son and his son's friends. The father's liability was made to turn upon the precise question that we have named as the single vital question in this case.

The opinion first remarked the entire accord of authority that the owner of a car can not be held liable in his absence, except that it be shown that the person in charge of the car not only was the owner's servant, but was engaged at the time in his business as well. The opinion then sets out the rule so aptly that we quote from it somewhat at length as an expression of the view which we have reached as the proper view. It says:

"Should we regard the relationship between the two defendants merely as that of owner and chauffeur-master and servant—the owner should not be held liable for the negligence of the chauffeur, since the evidence shows beyond question that the latter was using the machine merely for his own pleasure. But Ernest (the son) was more than a mere chauffeur. He was the minor son of the owner and was using the car for his own pleasure—it is true—but with the permission of his father and for one of the very uses for which his father kept the vehicle. The evidence discloses that the machine was devoted to the use of the family of which Ernest was a member. It was a pleasure vehicle, and, when used for the pleasure of one of the minor children of the owner, how can it be said that it was not being used on business of the owner? It is the practice of parents to provide their children healthful and innocent amusements and recreations, and certainly it is as much the business of parentage to supervise and control the pleasure of their children as it is to give them nurture and education. Had Ernest been taking his mother for a pleasure ride instead of taking some of his young friends, no one would contend that he was not on his father's business; or, had he been using the car on an errand of his own, such as shopping for himself, or going to school, he would have been on his father's business, since it was the duty of his father to support and educate him. The rule that a father is not liable for the torts of his minor child applies only to cases where the tort is committed without the consent of the parent and without the scope of any duty he owes his child. We conclude that, in running the car with the consent of his father and within the scope of family uses, Ernest was the agent and servant of his father."

So, in the case at bar, the father had provided his family with this car as a means of recreation and amusement; and the son in the use of the car for that purpose was not performing an independent service of his own,

but was carrying out what, within the spirit of the matter, was the business of the father.

The case of Moon v. Matthews, 227 Pa., 448, s. c., 76 Atl., 219, s. c. 29 L. R. A. N. S., 856, is in point. In that case the chauffeur, under the direction of defendant's sister, who made her home with him as a member of his family, had taken the car and was driving his sister with some of her guests entirely without the knowledge of the owner. It was remarked that the occupants of the car were the defendant's friends and guests of his sister and that the errand upon which the car was taken was entirely proper and fitting in itself. The master was held liable. This is other general authority to sustain the same position; but the quotation made from Daily v. Maxwell is so excellent an exponent of our view that we do not enlarge upon the authorities.

It is true that there is authority of a most excellent character in direct conflict with the views which we have set out. Notable among the cases are those of Doran v. Thomson, 76 N. J. L., 754, s. c., 71 Atl., 296, s. c., 131 Am. St. Rep., 677, and Maher v. Benedict, 108 N. Y. Supp., 228; but the conclusion reached by us is sustained both by the case of Lashbrook v. Patten from this court, and by what we believe to be the sounder argument. It is not necessary to protract this discussion of the law by any general consideration of the elementary principle, whether contractual or from custom, which create the relation of master and servant; nor to discuss the general but well settled liability of the master for the servant's negligence whilst in the furtherance of the master's business.

For the reasons given the judgment of the trial court is affirmed.