JAMES SULTZBACH, Appellee, v. FRANK SMITH et al.,
Appellants.

**PARENT AND CHILD:** Tort of Child—Parent's Liability—Absence
of Authority. A minor son, in using and operating the parent's
automobile for his (the son's) own personal pleasure, and with-
out the authority, express or implied, of the parent, is not en-
gaged *in the parent's business.* In other words, the "pleasure of
the family" is not the business of the parent, unless he expressly
or impliedly makes it so.

PRINCIPLE APPLIED: A parent, owning an automobile,
never wholly forbade his minor son to use the car, but did re-
peatedly forbid him (a) to use the car at night, or (b) to use
it when no other member of the family was along. The son,
without the parent's knowledge, persistently and willfully vio-
lated this direction, on one occasion even breaking into the
garage (some two or three blocks from the residence) to get
the car. On the occasion in question, the son, without the
knowledge of either parent, took the car after dark, and went
riding with other friends and collided with another car.
*Held,* the parent was not liable for the resulting damage.

*Appeal from Webster District Court.*—R. M. WRIGHT, Judge.

SATURDAY, MARCH 11, 1916.

ACTION for damages alleged to have resulted from the
collision of plaintiff's automobile with the automobile owned
by the defendant Frank Smith, and driven at the time of the
accident by the defendant Cecil Smith, minor son of the said
Frank Smith. There was a jury trial, resulting in a verdict
and judgment against both defendants in the sum of $250.
The defendant Frank Smith appeals.—*Reversed* and
*Remanded.*

*Healy & Thomas,* for appellant.

*Kenyon, Kelleher, O'Connor & Price* and *Floyd Douglas,*
for appellee.

PRESTON, J.—In so far as the issues relating to the defend-

ant and appellant, Frank Smith, are concerned, they are substantially as follows: The plaintiff alleged that Cecil Smith, the driver of the automobile at the PARENT AND time of the accident, was the minor son of CHILD: tort of child: parent's appellant, and that the said Cecil was per- liability: ab- sence of au- mitted by his father to use, employ and thority. drive the said automobile, both for the convenience and pleasure of the said Cecil Smith, and as the agent of the said Frank Smith.

The defendant Frank Smith denied that he permitted his son to use or to drive the said machine at the time in question, or that the said Cecil was acting as his agent at said time in any way. He further averred that he had expressly forbidden his son to drive said automobile at said time or at night. He says that he neither authorized, directed, consented to, nor had any knowledge of the use of said machine by the said Cecil. It appears from the evidence that, at the time of the accident, Frank Smith was out of the city.

It is contended by appellant that there is no conflict in the evidence, while appellee insists that, at some points at least, there is a conflict. We think it may be safely said that it is established without any substantial dispute in the evidence that the son did not have express permission of his father to use the automobile at the time of the accident in question; that the father was not at home at the time; that the son was joy riding with friends at the time in question, and that no other members of the family were with him; that the son did not have the implied permission of his father to use the automobile at said time, because he had been expressly forbidden to use the car at night or at any time except when accompanied by other members of the family; that the son was not engaged in his father's business nor in any way acting as his agent at the time of the accident, unless the mere fact that he was the son and a member of the family of the owner of the car and that the car was used on other occasions

by him and other members of the family, constituted him such agent.

It may be well to set out some of the testimony bearing upon this point. The appellant, Frank Smith, was the owner of an automobile, which he kept for use for himself and family. His family consisted of himself, his wife, and four children, the oldest of which is the defendant Cecil Smith. The car was used for family use, and kept in a garage about 2 or 2½ blocks from the family residence in Fort Dodge. There were two members of the family only who drove the car; they were the two defendants. The father frequently drove the car when out riding with his family, and sometimes it was driven by the son. Mrs. Frank Smith, the wife of appellant, testifies:

"I have heard my husband talking with our son Cecil in reference to the use of this Abbott-Detroit car, and about taking companions and others out riding. He had repeatedly talked to him before the accident, and the talks were about the time the car was purchased. My husband told my son that he couldn't take the car out unless his mother or some of the younger children were with him. He said that nearly every time the question of the car came up. Q. You say it is your recollection that he (Cecil) did not usually ask his father for permission to take any of the other boys out? A. Well, no, he never asked him, because he did not take them unless his father knew he was going to. His father would give permission. I don't know as it was permission, but it was simply a matter of courtesy in asking the boys to come in the car, whoever happened to be around."

The defendant Cecil testified:

"My father told me about May, 1913, that I couldn't take it and run around with it. He said I couldn't use the car to run around with, he didn't buy it for me to run around with, and that if I took the car he wouldn't let me drive it at all, he said if I took the car to pick up a gang and joy ride. Father averaged about twice a week telling me that. He told

me that if there was an accident he would be good for the accident, I or him—him and I, and the other fellows wouldn't help pay for it. He also said it was wasting gasoline and wearing out tires for nothing. I took the McCarley girl out a half a dozen times, and the Rogosch girl out two or three times. The Monk boy half a dozen times. I took him out with the family every week. He went down after my father with me. On Saturday, or something like that, we would take the car, we might go eight or nine miles in the country. On an average of once or twice a week from May until September, I would take the Monk boy out. Sometimes the family would be along. That would be an average of twice a week that I invited the Monk boy out. Sometimes my father would be along, and sometimes he would not. The family would not be along when I took the McCarley or the Rogosch girl. On occasions when I wanted to take boys and girls out, I cannot remember that I ever asked my father's permission. I took these rides at nobody's request, just because I wished to. I took the car six or seven times when the McCarley girl was along, on Saturday evening. It was generally Saturday evening that I took the car. I don't remember taking it, only one Sunday evening. I drove the car four or five times a week when I wasn't going to school. I frequently drove it when father was in the car. I don't remember of his speaking to me about the mileage. He surely did look at the speedometer on the car. I think he often looked at it. I do not know whether it was at the times when he looked at the mileage on the speedometer that he spoke to me on this average of twice a week, or not. I don't know whether it was after he had looked at the speedometer that he would say to me that he would not let me use the car at all if I used it for joy riding or not. I continued to drive the car with my father in it up to September 21st.''

The accident in question happened on the evening of September 21, 1914, between 8 and 9 o'clock. The appellant testified:

"I gave Cecil directions in reference to the use of the car after I bought it. I forbade him using the car, running around nights especially. I didn't object to him driving around a little in the daytime, but I forbade his using the car nights. I told him that any time his mother or the other children was along, he might have the car on those occasions. I didn't know until I heard it on the witness stand that he took the car and took young ladies or young men out riding at night. I spoke to him on several occasions about not using the car at night. I don't recall now just what brought it up. He was often wanting the car, and his mother thought I was kind of hard on him not letting him have the car to take some of his classmates out for a ride. I told him that if he took the car out on those occasions that I wouldn't let him drive it at all. I recall one occasion to mind, that I knew of his taking the car out, when he broke open the garage. I could not say how many times I told him that I did not want him to take this car out for his own pleasure. I could not say at this time how much mileage there was on the car. I certainly did look at it from time to time. I did not always look at the mileage, but I might have frequently looked at it. I looked at the speedometer on several occasions, and it certainly did come to my mind that there was a great deal of mileage on that car that I could not personally account for. I could not say how frequently it occurred that I looked at the speedometer and saw mileage on the car that I could not account for."

He also testified that he never did actually forbid the son from using the car altogether. There is evidence that Cecil's classmates at school sometimes rode with him when he was engaged in his father's business in the way of going after his father at his place of business and taking him home to lunch at noon. He was also permitted, on one or two occasions, to take the automobile to carry his classmates to the athletic field where they were playing football. On the evening in which the accident occurred, the father was absent from home, being

in the city of Minneapolis on business.   About seven o'clock that evening, a friend of defendant Cecil's called upon Cecil at his home.   Later in the evening, the two boys went away together, without in any way intimating to Cecil's mother that it was their intention to use the automobile.   They went to the garage, it then being dark, took the automobile, and went after two young ladies, with whom they had formerly made arrangements, and went for a drive.   After they had been driving a few minutes, the collision with plaintiff's car, resulting in the injuries complained of, occurred.   There is other testimony in the case of witnesses' seeing Cecil driving the car at different times.

The precise point has not heretofore been before us for determination.   The nearest case is that of *Crawford v. Mc-Elhinney,* 171 Iowa 606.   That case has not been cited, and was decided but a short time before the instant case was submitted.   There are cited in that case some of the cases relied upon by appellee herein.   In that case, the wife of the owner of the car was driving it at the time of the accident.   But there it was shown that the wife had always acted as the chauffeur of the car bought by the husband for the use of both of them, and that, in the particular instance, it was being used for the mutual pleasure of both, and the husband was present in the car at the time of the accident and had invited others in the car to ride with them.   Under the circumstances of that case, it was held that the owner and his wife were engaged in a common enterprise, and that the wife was the employee and agent of her husband.

There is a conflict in the authorities in other jurisdictions. Some of the cases go so far as to hold that the mere fact of the use of a car by a minor son alone, who was a member of the family of the owner, when used for the pleasure of that one minor child of the owner, is a sufficient showing that the minor son was using the car on business of the owner.   Such was the holding in *Daily v. Maxwell,* (Mo.) 133 S. W. 351, and there are other cases holding substantially the same.

Such was the situation in the instant case, except that with the minor son were three of his companions, but without the knowledge of the owner of the car. We are not disposed to go that far where, as in this case, the record shows that the parent repeatedly forbade the son to use the car at night or unless other members of the family were with him.

It is contended by appellee that the evidence was sufficient to warrant the jury in finding that there was full knowledge upon the part of appellant of the custom of his son Cecil to use the automobile whenever he chose for his own pleasure, and that the authority of the father for the use of an automobile by the son may be found as well in precedent course of conduct and implied from his acquiescence, even though the act at the time was contrary to the express direction of the parent. Authorities are cited for such holding. But in the instant case, the disobedience of the parent's orders was so persistent as to amount to willfulness on the part of the son; and at one time he even broke open the garage and drove to a distant city without the knowledge of the father.

We have before referred to the case of *Daily v. Maxwell,* holding that an automobile owner may properly make it an element of his business to provide pleasure for his family. This much was conceded, and was so held, in effect, in the *Crawford* case, *supra.* Further cases holding that the fact that an automobile is intended for use of the members of a family for purposes of pleasure, as well as for other purposes, leaves it a question for the jury to say whether its use by a member of the family who ordinarily drives it is with the knowledge and approval of the owner, are *Kayser v. Van Nest,* (Minn.) 146 N. W. 1091; *Birch v. Abercrombie,* (Wash.) 133 Pac. 1020 (50 L. R. A. [N. S.] 59-67); *Stowe v. Morris,* (Ky.) 39 L. R. A. (N. S.) 224; *McNeal v. McKain,* (Okla.) 126 Pac. 742 (41 L. R. A. [N. S.] 775).

The general rule is that a parent is not liable for the torts of his minor child, even though the child lives with the parent and is under his control, when such acts are done with-

out his authority, knowledge or consent, have no connection with his business, are not ratified by him, and are of no benefit to him.

The following cases hold that a father is not liable for an injury inflicted by his automobile while being driven by his son, merely because of the relationship: *Linville v. Nissen,* 162 N. C. 95 (77 S. E. 1096); *Loehr v. Abell,* 174 Mich. 590 (140 N. W. 926); *Roberts v. Schanz,* 144 N. Y. Supp. 824, and cases cited in note; *McNeal v. McKain,* 41 L. R. A. (N. S.) 775); *Birch v. Abercrombie,* 50 L. R. A. (N. S.) 59, and note; *White Oak Coal Co. v. Rivoux,* Ann. Cas. (1914 C) at 1091.

In *Reynolds v. Buck,* 127 Iowa 601, it was held that, even though a son is acting as the servant of his father in driving the father's automobile, the latter will not be liable for an injury occurring unless his son is at the time acting within the scope of his employment. Other cases are cited by appellant to the same point. There is a distinction between that case and the instant case, in that the automobile in the *Reynolds* case was not a family machine, and the question did not arise as to whether the driving of the family car by the minor was the business of the father. The principle holds good, however, that the father is not liable unless the son is at the time acting within the scope of his business, even though that business be driving the family car. The theory upon which the petition in this case was drawn and the case tried is that the defendant Cecil Smith, in driving the car for his own convenience and pleasure, was the agent of his father. There is no evidence that the father was negligent in permitting his son to drive the automobile, and there was no evidence upon the trial tending to show that Cecil was not a fit or proper person or a skilled person to drive an automobile. The theory that appellant is liable is upon the doctrine of agency; that is, that Cecil Smith, at the time of the accident, was the agent of his father, and that his negligence is imputed to the parent as principal.

Though the cases are not all in harmony, there are certain

well-known principles at the common law which are applicable, and we are inclined to follow the well-reasoned opinions which sustain the position that, under the circumstances of this case, the appellant is not liable for the damages resulting from the acts of his son.

In the case of *Smith v. Jordan*, 211 Mass. 269 (97 N. E. 761), it is said:

"The principles of law which govern this case are plain. A father is not liable for the torts of his minor son simply because of paternity. There must exist an authority from the father to the son to do the tortious act, or a subsequent ratification and adoption of it, before responsibility attaches to the parent. . . . The wrongful act must be performed by the son in pursuance of the business, incident or undertaking authorized by the father before the latter can be held liable. . . . If the act is not done by the son in furtherance of the father's business, but in performance of some independent design of his own, the father is not liable. The controlling rules of law are the same whether the business in question concerns the operation of an automobile or any other matter."

The same rule has been affirmed in the *Linville* case, the *Loehr* case, the *Roberts* case, before cited, and a number of cases to the same effect in the note to the *McNeal* case, 41 L. R. A. (N. S.) 775. In the case of *Parker v. Wilson*, (Ala.) 60 So. 150, questions arising on this point were very thoroughly discussed by the court in the following language:

"The meager facts before us though interpreted with favor to the appellant, present the case of a mere permissive use of the father's vehicle by the son for his own purposes of business or pleasure. On what principle can it be said, in this state of the case, that the son was the servant of the defendant and acting within the course or scope of his employment? It seems clear that the ordinary rule of master and servant has no application to such a case, and, prior to the advent of the automobile, the contrary doctrine had no gen-

eral currency in this country or England. . . . We find
*Daily v. Maxwell,* 152 Mo. App. 415 (133 S. W. 351);
*Stowe v. Morris,* 147 Ky. 386 (144 S. W. 52), and *Moon v.
Matthews,* 227 Pa. St. 488 (76 Atl. 219, 29 L. R. A. [N. S.]
856, 136 Am. St. Rep. 902), referred to as sustaining appel-
lant's contention for appellee's liability in this case. The
first named of these cases is closely in point and does clearly
hold with the appellant. In the second, there were members
of the family, other than the driver, in the machine. The
third may be discriminated on the very substantial ground that
the machine was being operated by a driver regularly
employed for the purpose. The doctrine contended for
amounts to this: That the pleasure of the family in its utmost
detail is the business of the father. As applied to the case
at hand, it means that the son, in pursuit of his own pleasure,
with an automobile owned by his father, was engaged in
the business of the father. But the doctrine, we think, has
no firm foundation in reason or common sense. In theory
it overlooks well-settled principles of law; in practice it
would interdict the father's generosity, and his reasonable
care for the pleasure or even the well-being of his children, by
imposing an universal responsibility for their acts. As said
in *Doran v. Thomsen,* 76 N. J. L. 754 (71 Atl. 296, 19 L. R.
A. [N. S.] 335, 131 Am. St. Rep. 677): 'It would subject
a parent to liability if he bought for his son a baseball or for
his daughter a golf club, and, by permitting them to be used
by his children for their appropriate purposes, injury occur-
red. It bases the creation of the relation of master and ser-
vant upon the purpose which the parent had in mind in
acquiring ownership of the vehicle and its permissive use by
the child. This proposition ignores an essential element in
the creation of that status as to third persons, that such use
must be in furtherance of, and not apart from, the master's
service and control, and fails to distinguish between a mere
permission to use and a use subject to the control of the
master and connected with his affairs.' In the case from

which we have just quoted it was held, on facts substantially identical with those in the case at bar, that the owner of the automobile and father of the driver was not liable. So in *Maher v. Benedict,* 123 App. Div. 579 (108 N. Y. Supp. 228). The same conclusion finds support in *Smith v. Jordan,* 211 Mass. 269 (97 N. E. 761), which case is stated and commented upon in 75 Cent. Law J. 43, as follows: 'Thus in the Massachusetts case a father purchased an automobile for the use of the family, and his minor son was the only member of the family licensed to operate it. The wife had permission to use it at her pleasure, and the son was expected to obey any request of his mother to take her out in the car. Plaintiff was injured by the son's negligence, when he was taking his mother out, at her request. The court said: ''If, instead of hiring a stranger, the father chose to have the same work performed by his minor son, to whose time and services he was entitled as a matter of law, it could not be ruled as a matter of law that a jury might not find the business to be that of the father. This is not a case of mere permissive use of the father's vehicle by the son for his own pleasure.'' This authority, therefore, might even be deemed against, rather than in support of, the principal case (*Stowe v. Morris, supra*), especially when it was stated in another part of the opinion: ''If the act is not done by the son in furtherance of the father's business, but in performance of some independent design of his own, the father is not liable.'' Liability was placed merely on the fact that there was room in the evidence for the jury to find that a request by defendant's wife was equivalent to direction by him for his son, as his hired man, to perform for him a service.' Our opinion is that the evidence, at best for appellant, authorized a finding of a mere permissive use by his son of the defendant's automobile, and that for the son's negligence therein the defendant is not liable.''

It is clear that the appellant herein is not liable in this case because of having given his son express consent to use

the automobile on the occasion in question. Were it not for the fact that he had expressly forbidden his son on repeated occasions to use the automobile, there might be some basis for the claim by appellee that the son had the implied consent of his father to take the automobile and to use it for his own pleasure. The fact, however, that the appellant did repeatedly forbid the son to use the machine, and the persistent and willful conduct of the son in disregarding the father's commands, ought to be and is a sufficient reason for holding that the son was not using the automobile with the implied consent of the father at the time in question, even though it be true that, on a few other occasions, the son had used the machine on his father's business and as his agent. There is little else that the father could have done in this case to prevent the son's using the car, unless he had physically restrained him.

In our opinion, on the evidence presented on this appeal, there ought to be no recovery against the appellant Frank Smith. The judgment of the district court is therefore reversed and remanded.—*Reversed* and *Remanded.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.