Phil Landry, Appellee, v. Julius Oversen, Appellant.

NEGLIGENCE: Imputed Negligence—Automobile Driven by Owner's Daughter. A minor daughter of one who owns an automobile for pleasure is one of those for whose pleasure and convenience it is kept, and when so operated, it is being used in one of the enterprises or businesses of the owner. Therefore, proof that the defendant owned the automobile at the time the daughter was operating the same made out a prima-facie case that it was then in his possession, and that she was operating it for him.

TRIAL: Evidence—Burden of Proof. The burden of proof does not change, and continues on the complaining party throughout the trial.

NEGLIGENCE: Imputed Negligence—Owner's Liability. Where an automobile is driven for pleasure by the daughter of the owner, with his consent, express or implied, he is liable for her negligence in its operation.

NEGLIGENCE: Imputed Negligence—Evidence. Evidence reviewed, in an action for damages caused by an automobile driven by the daughter of the owner, and held sufficient to go to the jury upon the question of the father's consent to the operation of the automobile by her.

*Appeal from Woodbury District Court.—*W. G. Sears, Judge.

October 14, 1919.

ACTION for damages consequent on a collision with an automobile, resulting in a verdict for the plaintiff and judgment thereon. The defendant, Julius Oversen, appeals. —*Affirmed.*

*Henderson, Fribourg & Hatfield,* for appellant.

*Shull, Gill, Sammis & Stilwill,* for appellee.

LADD, C. J.—In the evening of June 16, 1917, at about 9:30 o'clock, the plaintiff stepped from a street car, as it stopped near the intersection of Morningside Avenue and Nicollet Street, in Sioux City, and was struck by an automobile, moving at a high rate of speed, and operated by Mildred Oversen, daughter of the defendant, Julius Oversen. She was then past 16 years of age, though a minor, and on the trial, was found to have been negligent, and the injuries the proximate result thereof. Judgment was entered against her, from which she has not appealed. Julius Oversen was also defendant, and a like judgment entered against him, on the theory that, at the time of the collision, she was operating the car as his servant or agent. The latter has appealed, and the only question for our determination is whether the evidence was sufficient to carry to the jury the issue of fact: Was she operating the automobile with her father's consent?

Oversen purchased the automobile in May, 1916, and used it in conducting his business, until another car was obtained. Thereafter, he kept it for the pleasure and convenience of his family. Mildred learned to operate the automobile when it was first acquired, and so did after the other car was obtained, as occasion required, up to the time of the collision. As minor daughter of the owner and member of his family, she was something more than a mere chauffeur. She was one of those for

1. NEGLIGENCE: imputed negligence: automobile driven by owner's daughter.

whose pleasure and convenience the car was kept. When so operated, the machine was being used in one of the enterprises or in the business of the owner. *Collinson v. Cutter,* 186 Iowa 276; *Daily v. Maxwell,* 152 Mo. App. 415 (133 S. W. 351); *Stowe v. Morris,* 147 Ky. 386 (39 L. R. A. [N. S.] 224). The rule is well established that proof that defendant owned the automobile at the time his daughter was operating the same made out a prima-facie case that the vehicle was then in his possession, and that she was operating it for him. *Birch v. Abercrombie,* 74 Wash. 486 (50 L. R. A. [N. S.] 59); *Edgeworth v. Wood,* 58 N. J. L. 463 (33 Atl. 940); *Schulte v. Holliday,* 54 Mich. 73; *Norris v. Kohler,* 41 N. Y. 42; *Seaman v. Koehler,* 122 N. Y. 646 (25 N. E. 353). This, however, is a mere inference that an owner probably is in control of his own property, and is to be given no greater weight than is required to compel the owner to identify those operating the vehicle, and explain by what authority, if not his own, it is being run. Although an automobile is not *per se* a dangerous agency (*House v. Cramer,* 134 Iowa 374; *McNeal v. McKain,* 33 Okla. 449 [41 L. R. A. (N. S.) 775]), it usually moves at a high speed; and a person injured, or others, after it has passed, at least experience difficulty in recognizing its driver or other occupants. The owner may be ascertained, however, by noting the number on the car, and by an examination of the official registration thereof. The owner may well be assumed to know how and by whom his property is being used, and if he deny that the automobile was being operated for him, it is not too much to exact from him a showing of the facts claimed to sustain such denial; and such is the rule. This does not change the burden of proof. That continues on the complaining party throughout the trial. See *Graham v. Courtright,* 180 Iowa 394.

2. TRIAL: evidence: burden of proof.

The proof of ownership of the automobile at the time of

the collision merely makes out, *prima facie,* that the automobile was being operated for the owner, and to avoid a finding to this effect, there must be some showing to the contrary.    The strength of the prima-facie showing necessarily depends on the circumstances of each

3. NEGLIGENCE: imputed negligence: owner's liability.

particular case.    That the automobile was being operated by a daughter, and the circumstance that the vehicle was being used in the enterprise or business of the owner, added strength to the presumption that it is being operated for the owner. Here, there is no controversy but that the vehicle was being operated for the purpose for which it was kept.    The contention is that the evidence was not sufficient to support the finding of the jury that Mildred Oversen was operating the car with the consent, express or implied, of her father.    If it can be said from the evidence that there was such consent, then the court rightly submitted this issue to the jury, and Oversen is liable.    *Collinson v. Cutter,* 186 Iowa 276; *McNeal v. McKain,* 33 Okla. 449 (41 L. R. A. [N. S.] 775, with note); *Sultzbach v. Smith,* 174 Iowa 704; *Dircks v. Tonne,* 183 Iowa 403.    It ap-

4. NEGLIGENCE: imputed negligence: evidence.

pears that Mildred took the machine at about 7:30 o'clock in the evening, accompanied by her sister, 13 years of age, and drove first to the library, to return books, and then out to Leeds, a suburb of Sioux City.    A neighbor boy and two girl friends accompanied them.    She testified that this was without the permission of her father, and that he had forbidden her to take out or drive the car when not accompanied by one or both her parents, but that she had driven without either, seven or eight times, generally about an hour at a time; that she had once so driven through the business portion of the city, two or three miles distant, around Peter's Park, taking Kodak pictures, and at other times about Morningside; that she bought gas once, had a

puncture at another time, and had had the gas and repairs charged to her father. The latter swore that he had forbidden Mildred to make use of the automobile when not accompanied by one of her parents; had repeatedly so done, and had not consented to its use in the evening of June 16th; that he paid all bills for gas and repairs, but so did without noticing that the gas was bought and the repairs occasioned when Mildred was operating the car unaccompanied by either parent; and that he was without knowledge that she ever had run the automobile unaccompanied by either parent. But about ten days after the collision, to plaintiff's suggestion that his daughter must have driven recklessly, he responded:

"No, I don't think she is a reckless driver. She drives the old lady, and I think she is a good driver. You see, she was coming home, and got home late, and she had to stop at the corner of Cleveland (Street) for the car to go by."

No reference was made to the fact, if such it was, that she was out with the car notwithstanding he had forbidden her so doing, as would have been likely, had this been true. Several witnesses testified to having seen Mildred driving the automobile about the suburb many times without her parents, though with young persons. Mrs. Milton had seen her drive the machine out of the yard a half dozen, or possibly more, times alone. Another had seen her driving without either parent as many as eight or ten times, and still another, as many as a half dozen times. Mildred was unable to recall any particulars of having so taken the car more than twice, but she testified to having driven Hansen's car, accompanied by the latter's daughter, and Mrs. Bayne's car, accompanied by her, and that these cars were like that of her father. Her mother was not called as a witness. A brother older and two brothers younger, and also two younger sisters, were living at home; and yet

Oversen insists that, though Mildred had driven the car seven or eight times in broad daylight, within the few months previous to the accident, in disobedience of his orders, he had learned nothing of it.

The story certainly is unlikely. Even though he may have forbidden her to operate the car without being accompanied by her parents, the order was more honored in breach than observance, and the jury might have found that, notwithstanding what he had said, he acquiesced in her use of the car, contrary to his command. What happened on the evening in question casts doubt on his story; for he was at the evening meal, as was she, and she took the automobile at 7:30 o'clock, drove past the place where her mother was calling, and returned at a time when she must have known Oversen would ascertain that she had taken the car in defiance of his authority. The particular defense interposed is one easily manufactured, and difficult to meet. The complaining party necessarily must, in order to overcome such a claim, rely largely on the unreasonableness of the story, if it so appears, and its inconsistency, if it is so, when compared with all the facts and circumstances of the case. We are of the opinion that whether Mildred was operating the automobile with her father's consent, express or implied, was fairly for the jury to determine.—*Affirmed*.

WEAVER, GAYNOR, and STEVENS, JJ., concur.