HENRY NAPIER, Appellee, v. J. W. PATTERSON et al., Appellants.

**PRINCIPAL AND AGENT: Torts—Operation of Automobile.** The
1 owner of an automobile who *impliedly* consents to the operation of the vehicle by *any* person for the use, convenience, or pleasure of the

owner's family (such being the purpose for which the vehicle is kept) thereby constitutes such operator his agent; and the jury may find such consent from the fact that the car was frequently operated for said purposes, without protest from the owner, by one who, while not a member of the family, yet occupied a very intimate relation toward it—a prospective son-in-law.

FAVILLE and DE GRAFF, JJ., dissent, on the present record.

**PARENT AND CHILD:** Torts of Child. Principle reaffirmed that a
2    parent is not liable for the torts of his child solely on the ground of
relationship.

**NEGLIGENCE:** Proximate Cause—Violation of Ordinance. The opera-
3    tion of a vehicle without lights on the public highway, in violation
of a city ordinance, becomes unimportant when the absence of such
lights *did not contribute* to the injury in question.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

DECEMBER 14, 1923.

REHEARING DENIED JUNE 28, 1924.

ACTION at law, to recover damages on account of personal injury received by plaintiff in a collision between an auto car operated by the defendant Paul and a horse-drawn vehicle in which the plaintiff was riding. There was a jury trial, and verdict returned for the plaintiff in the sum of $24,937.50 against the defendants Paul and J. W. Patterson, and a directed verdict in favor of the defendant Mrs. Patterson. Judgment for plaintiff on the verdict, and the defendants J. W. Patterson and Paul appeal.—*Affirmed.*

*Clark & Byers,* for appellants.

*Casper Schenk,* for appellee.

PER CURIAM.—I. While riding as a guest in a one-seated buggy, drawn by one horse, appellee was severely and permanently injured by a collision of appellant Patterson's auto-

1. PRINCIPAL AND
AGENT: torts:
operation of
automobile.

mobile with the rear of said vehicle. The automobile was owned by appellant J. W. Patterson, and was being operated by the appellant Russell Paul, who, at the time, was a farm hand in Patterson's employ. The accident occurred shortly after 9 o'clock, Sunday evening, November 11, 1917, on Southeast Sixth Street, near its intersection with Davis Avenue, in the city of Des Moines. No claim is made that the evidence was insufficient to justify the submission to the jury of the issue of Paul's negligence. It is earnestly argued, however, by appellants that both the driver of the horse-drawn vehicle and appellee were guilty of contributory negligence. The material evidence upon this point will be stated when we come to the discussion of this proposition.

One of the principal contentions of appellant Patterson is that Paul was driving the automobile on the night in question without his knowledge or consent, and in violation of repeated admonitions to him not to drive it, and that the trip to and from the city was for his own pleasure, and not for any purpose or pursuit of the owner's, or in connection with his employment as a farm hand, and that Mary Patterson, the owner's daughter, and her mother, accompanied Paul at his invitation, as his guests. While there may be more or less confusion in the cases, the liability of the owner of an automobile for damages caused by the negligent operation thereof by a third party rests, under all the holdings of the courts, upon the doctrine of agency, express or implied. *Lewis v. Steele,* 52 Mont. 300 (157 Pac. 575); *Smith v. Jordan,* 211 Mass. 269 (97 N. E. 761); *Van Blaricom v. Dodgson,* 220 N. Y. 111 (115 N. E. 443); *Parker v. Wilson,* 179 Ala. 361 (60 So. 150); *Missell v. Hayes,* 86 N. J. L. 348 (91 Atl. 322); *Watkins v. Clark,* 103 Kan. 629 (176 Pac. 131); *McGowan v. Longwood,* (Mass.) 136 N. E. 72; *Crossett v. Goelzer,* 177 Wis. 455 (188 N. W. 627). This is the principle upon which the so-called "family-use" doctrine is based. The driver of the automobile at the time of the accident in question was not a member of Patterson's family, but a servant, employed upon the farm upon which the family lived; a few miles south of Des Moines. This and all other courts adhere to the common-law rule that a parent is not liable for the torts

of his child, solely on the ground of relation-
2. PARENT AND
   CHILD: torts of   ship. *Landry v. Oversen,* 187 Iowa 284; *Bald-*
   child.             *win v. Parsons,* 193 Iowa 75; *Dircks v. Tonne,*
183 Iowa 403; *Collinson v. Cutter,* 186 Iowa 276; *Sultzbach v. Smith,* 174 Iowa 704; *Curry v. Bickley,* 196 Iowa 827; *Rowland v. Spalti,* 196 Iowa 208.

To constitute the relation of principal and agent or master and servant, it is not necessary that there be an express contract between them, or that the services be rendered for compensation. The relationship may be either express or implied. Unless, therefore, the appellant Paul was, on the occasion in question and at the time of the accident, the owner's agent, and engaged in performing some service for his employer, the employer is not liable. If, at the time, Paul was in the wrongful possession of the automobile, or was driving it solely for his own pleasure and convenience, then the negligence was his own; and, under the practically uniform holding of the courts, judgment was improperly entered against Patterson in the court below. The question whether Paul was the agent or servant of his coappellant is a question of fact. It is conceded that he was employed as a farm hand, and that he performed the usual labor and duties of such employment, and that he was under the control of and subject to the command of his employer. It may be assumed that acting as chauffeur for the family to and from church on the Sabbath would not be one of the usual and ordinary duties of a farm hand; but there is no reason why such services may not be rendered by a servant of this character, at the request or command of the master.

There should be no confusion in our authorities on the subject of the father's liability for damages inflicted by a member of his family while in charge of and driving an automobile purchased by him for family use. To subject the appellant to liability, something more than the mere relationship must be shown. If an automobile is purchased by the father for the use and convenience of the family, and it is so used by a member thereof, with the knowledge and consent of the parent, express or implied, the relation of master and servant is created, and the doctrine of *respondeat superior* is applicable. If a member

of the family negligently inflicts an injury upon a third party, while driving an automobile owned by his parent, in pursuit of his own pleasure, or for an independent purpose of his own, and under circumstances from which agency cannot be inferred, the father is not liable. *Rowland v. Spalti,* 196 Iowa 208. A member of the family, when operating an automobile which was purchased by the father for the use and convenience of such family, with the father's permission or authority, express or implied, is engaged in his service, as his agent. The automobile, in such circumstances, is being operated by the member of the family for the very purpose for which it was purchased by the father. This doctrine is well expressed by the Washington court in *Birch v. Abercrombie,* 74 Wash. 486 (133 Pac. 1020):

"In running his vehicle, she was carrying out the general purpose for which he owned it and kept it. No other element is essential to invoke the rule *respondeat superior.* We think that the instruction which is criticized in the *Doran* case is, in itself, a complete answer to the opinion. It declared the use of the machine for the purpose for which it was owned, by the person authorized by the owner to so use it, a use in the owner's business. It seems too plain for cavil that a father who furnishes a vehicle for the customary conveyance of the members of his family makes their conveyance by that vehicle his affair,—that is, his business; and anyone driving the vehicle for that purpose with his consent, express or implied, whether a member of his family or another, is his agent. The fact that only one member of the family was in the vehicle at the time is in no sound sense a differentiating circumstance, abrogating the agency. It was within the general purpose of the ownership that any member of the family should use it, and the agency is present in the use of it by one, as well as by all. In this there is no similitude to a lending of a machine to another for such other's use and purpose, unconnected with the general purpose for which the machine was owned and kept."

The following are also well considered cases from other jurisdictions on this point: *Missell v. Hayes,* 86 N. J. L. 348 (91 Atl. 322); *King v. Smythe,* 140 Tenn. 217 (204 S. W. 296); *Hutchins v. Haffner,* 63 Colo. 365 (167 Pac. 966); *Boes v.*

*Howell,* 24 N. M. 142 (173 Pac. 966) ; *Hazzard v. Carstairs,* 244 Pa. 122 (90 Atl. 556) ; *Freeman v. Green,* (Mo. App.) 186 S. W. 1166 ; *Benton v. Regeser,* 20 Ariz. 273 (179 Pac. 966) ; *Uphoff v. McCormick,* 139 Minn. 392 (166 N. W. 788) ; *McNeal v. McKain,* 33 Okla. 449 (126 Pac. 742) ; *Stowe v. Morris,* 147 Ky. 386 (144 S. W. 52).

One of the purposes for which Patterson purchased the car, according to his own testimony, was that it should be used for the convenience and pleasure of his family. It is true that the evidence shows that he owned two cars, an old one and a new Velie, which Paul was driving on the evening in question, and that he reserved the new car for his own use, and forbade Paul to drive it. This claim, supported by the testimony of Paul, Mary, and Mrs. Patterson, is not necessarily conclusive upon appellee. One of the most common uses of an automobile, for the convenience of the family, is to convey them to and from church on the Sabbath. Appellant did not usually attend church; but the other members of his family were accustomed to go, with more or less frequency. The family resided on a farm, several miles from the city, and when any of its members went to church, they went or were taken in the automobile. The Patterson family consisted of appellant, his wife, and his daughter. At the time of the accident, on the night in question, they were returning home from Des Moines, where they had attended a lecture at an east-side church. Mrs. Patterson was seated in the rear seat, and Paul and Mary in the front seat of the car. Paul was driving it.

The testimony of the members of the Patterson family to the effect that Paul had been forbidden by his employer to drive the automobile, and that it was taken from the premises on the night in question without his knowledge or consent, and at the suggestion of Mary, is not directly contradicted by appellee's witnesses. There was no one else present whose direct testimony could be offered on this point. It was not necessary, however, for appellee to prove by direct testimony that Paul was in possession of the automobile with the knowledge and consent of Patterson. This might be inferred from circumstances. Nor was it necessary that knowledge and consent be shown on each

occasion, as this, too, may be implied from the conduct of the parties generally. Evidence was introduced by appellee which tended to show that Paul frequently drove the car in the absence of Patterson, and that, on various occasions, he had taken Mary and her mother to church, with the knowledge of Patterson. It was admitted that appellant did not take Paul to task for driving the automobile on these occasions. Paul and Mary intermarried, shortly after the accident. It is well settled that, where the vehicle doing the damage belonged to the defendant at the time of the injury, that fact alone establishes *prima facie* that the vehicle was then in the possession of the owner, and that whoever was driving it was doing so for him. *Landry v. Oversen,* supra; *Curry v. Bickley,* supra; *Baldwin v. Parsons,* supra; *Birch v. Abercrombie,* and other cases cited supra. Of course, the prima-facie showing of these facts may be overcome by other proof. The question of proof required would, of course, depend upon the circumstances and the character of the evidence offered for that purpose. It seems to us that the admission of the appellant Patterson that he purchased the car, in part at least, for the use and convenience of his family, together with the evidence that Paul frequently drove it, and that he had repeatedly taken the family to church in the new automobile, and the evidence of the intimate relations existing in the family, and that Patterson seldom attended church or drove the automobile when accompanied by the family, made it the duty of the jury to determine whether, at the time of the accident, Paul was the agent of Patterson. The instructions submitted this issue to the jury upon the theory outlined above, and that of the cases cited. The jury made a special finding on this issue, which in effect found that Paul was acting as the agent of Patterson at the time of the accident.

II. An ordinance of the city of Des Moines makes it unlawful for any person to ride, drive, or propel, or cause to be driven or propelled, any vehicle upon or along the streets, avenues, alleys, or other public places in said city in the nighttime without displaying a white light, visible in the direction in which the vehicle is traveling, and a red light on the rear thereof, visible to trav-

3. NEGLIGENCE: proximate cause: violation of ordinance.

elers approaching it from that direction. The evidence is in dispute as to whether there were any lights attached to the buggy at the time of the accident, but a jury would have been warranted in finding that a white light was displayed on the side of the buggy, in front of the seat. No visible red light was attached to the rear of the vehicle. The appellee and the owner of the buggy both testified that they saw the car approaching, and realized that it was being driven at a high rate of speed. The driver testified that he drove next to the curb, on the proper side of the street. The automobile struck the rear of the buggy. No warning was sounded by Paul.

Contributory negligence of appellee and the driver of the buggy is urged by appellants, upon the ground that the violation of the ordinance, by failing to display the proper lights on the buggy, was one of the contributing causes to the accident, and also that the occupants of the buggy had ample time to have gotten out of the way, or to have given such warning to the driver of the automobile as would have prevented the collision, with the resulting injuries to appellee.

It appears from the record that the night was dark; that the vehicles were in the vicinity of railroad tracks; and that the street was imperfectly lighted. The occupants of the automobile did not discover the presence of the buggy until an instant before the collision. The mere fact, if such were admitted, that the owner of the vehicle was driving it upon the street in violation of an ordinance of the city which made it unlawful for him to be upon said street without displaying a white light in the front and a red light in the rear thereof, is not sufficient to prevent recovery. It must further appear that his illegal conduct contributed to the accident, to have this effect. Causal connection between the illegal conduct of the driver of the buggy and the collision and resulting injuries must be shown, to bar recovery upon the ground of contributory negligence. *Phipps v. City of Perry*, 178 Iowa 173; *Lockridge v. Minneapolis & St. L. R. Co.*, 161 Iowa 74; *Swaim v. Chicago, R. I. & P. R. Co.*, 187 Iowa 466; *Gross v. Miller*, 93 Iowa 72; *Young v. Chicago, M. & St. P. R. Co.*, 100 Iowa 357; *McSpadden v. Axmear*, 191 Iowa 547.

We shall not extend this opinion by quoting from the record. We have examined it with due care, and are satisfied that this issue was properly submitted to the jury. It is perhaps true that, if appellee and his companion had realized the peril in which they were placed by the rapidly approaching automobile driven by Paul, and had realized in time that Paul did not see them, they might have abandoned the buggy and escaped injury. Notwithstanding that they saw the automobile when several hundred feet away, but few seconds elapsed thereafter before the collision; and it was for the jury to determine whether they were negligent in not getting out of the way, and whether they had time to avoid the accident after they realized their danger.

The jury, in answer to a special interrogatory, found that the absence of lights upon the buggy did not contribute in any manner to the injuries complained of.

III. Paragraphs 8, 9, 10, 11, and 12 of the court's instructions to the jury are also criticized. Instruction Paragraph 8 related to the alleged contributory negligence of the occupants of the buggy in failing to have the same properly equipped with lights. The instruction is in harmony with the authorities cited. A portion of Instruction 11 relating to the same subject is criticized. This instruction also appears to announce a correct proposition of law. The remaining instructions complained of may be open to some criticism, but we find nothing in them that could have misled the jury. Four instructions were requested by appellants. They are in direct conflict with the theory of the court upon which the case was submitted, and were properly refused. We find no reversible error in the court's statement of the law to the jury.

IV. The court reduced the verdict to $12,850, and appellee remitted all over that amount. Appellants complain that the verdict was so excessive as to indicate passion and prejudice on the part of the jury, and that, instead of a reduction in the amount, a new trial should have been granted. It must be confessed that the verdict is for a large amount; but the injuries inflicted were very severe, and of a character to more or less permanently disable appellee from following any useful employ-

ment, and to make him an object of charity. He was but 31 years of age, a carpenter by trade, and, at the time of the accident, in good health. We think that the amount fixed by the court and the remittitur filed by appellee is not excessive.

V. The only remaining question discussed by counsel is their contention that two special interrogatories submitted to the jury by the court upon its own motion were improper and prejudicial. The special interrogatories have already been referred to. We cannot perceive how appellants could have been prejudiced by these special interrogatories. They were as favorable to one side as to the other, and related to the two vital questions in the case.

We find no reversible error in the record, and the judgment of the court below is—*Affirmed.*

PRESTON, C. J., EVANS, STEVENS, ARTHUR, and VERMILION, JJ., concur.

FAVILLE and DE GRAFF, JJ., dissent.

DE GRAFF, J. (dissenting). I have no quarrel with the statement of abstract legal principle as announced in the majority opinion, but respectfully dissent from the application of that principle to the record facts. The liability, if any, of the defendant J. W. Patterson must be predicated on the doctrine of implied agency. There was no express agency. That much is conceded. The "family-use" doctrine, as it has been heretofore denominated, is but another name for implied agency. It is but a matter of terminology. In the application of the theory of implied agency, the scope of the employment must be considered in the same manner as in an express agency.

Here we find a hired hand on a farm, and his employment clearly did not contemplate the function of a chauffeur. Furthermore, the evidence is undisputed that not only was his employment as a driver of this car outside the relation of master and servant, under any contract, express or implied, but his right or privilege to drive or use this car was expressly prohibited by the master and owner.

Mere ownership of an auto, *per se,* imposes no civil liability on the owner in the event of damages resulting from the negligence of some other person in the use thereof. An auto is not an inherently dangerous instrumentality, and there is and should be no different rule of liability in tort as applied to an auto than to any other instrumentality. There is no theory of social duty involved.

Upon what, then, may the judgment against Patterson be sustained? Simply this: that, since the hired man had used the car two or three times previously, and accompanied with the wife and daughter, although contrary to the specific instructions and prohibition of the owner, an implied agency arises.

The wife had no authority to create an agency in this particular, binding the husband and owner to respond in damages for the negligence of a driver, whosoever he may be. In the instant case, she was the mere guest of the driver. It may also · be said that repeated wrongful conversions of a specific chattel by a servant or agent, whereby, in a subsequent conversion, perchance a damage to a stranger results, do not create a liability on the part of the master and owner of the chattel, or furnish as to the latter a rule or measure of damage. In brief, it does not create an agency by implication.

The majority opinion bases the liability of Patterson on an implied agency, concerning which, in my judgment, the record is barren.

FAVILLE, J., joins in the dissent.