LEWIS, ADMR., RESPONDENT, *v.* STEELE, APPELLANT.

(No. 3,638.)

(Submitted March 27, 1916.   Decided April 28, 1916.)

[157 Pac. 575.]

*Automobiles—Cities and Towns—Street Accident—Parent and Child — Negligence—Liability — Respondeat Superior—Evidence.*

Personal Injuries—Contributory Negligence—Pleading.
1.   A plea of contributory negligence may be coupled with a denial of primary negligence; hence it was error to sustain a demurrer to an answer so pleading, in an action for damages for the death of plaintiff's intestate alleged to have been caused by the negligent driving of an automobile.

Same—Demurrer—What not Harmless Error.
2.   Error in sustaining a demurrer to the plea of contributory negligence, because coupled with a denial of negligence on defendant's part, thus rendering inadmissible any evidence on contributory negligence as a defense, *held* prejudicial, notwithstanding evidence suggesting contributory negligence was admitted during the trial and instructions on the subject were given.

Same—Automobiles—Negligence—Parent and Child—Liability of Parent.
3.   Since a father is not responsible for the negligent or willful torts of his child, and an automobile is not inherently dangerous, the father may not be held responsible for the killing of a pedestrian by the negligence of his minor son in driving his father's machine, if it was taken without his knowledge or consent, or, if with his consent, it was taken for a purpose foreign to that for which it was kept and customarily used.

Same—Liability of Parent—*Respondeat Superior.*
4.   *Held,* that defendant, as owner of an automobile used for the pleasure of himself and his family, including two minor sons upon whom he relied as drivers and from whom he exacted such service, was liable, under the doctrine of *respondeat superior,* for injuries to a pedestrian resulting in death, occasioned through the negligent running of the machine by one of his sons who was using it at the time, with defendant's consent, to convey a party of friends to a dance.

Same—Automobiles—Negligence—Rule of Liability.
5.   In the absence of legislation to the contrary, the same general rules of responsibility, direct and consequential, are applicable to the use of an automobile as apply to other common methods of transportation.

[As to negligence in case of automobile accidents on highways, see note in 108 Am. St. Rep. 213.]

Same—Damages—Earning Capacity—Evidence—Technical Error.
6.   The admission of evidence as to the usual charges made by

The question of liability of owner of automobile where parent's automobile is being driven by child is discussed in notes in 41 L. R. A. (n. s.) 775; 50 L. R. A. (n. s.) 59; 10 L. R. A. (n. s.) 933.

Christian Science practitioners, in the absence of a showing that deceased was accustomed to make such charges, was technical error.

Same—Automobiles—Excessive Speed—Evidence—Admissibility.

7. Testimony of one of the occupants of the automobile at the time of the accident, that the appearance of deceased was so sudden that it could not have been stopped in time to avoid striking her, even if its speed had not exceeded four miles an hour, was admissible as tending to show that the accident was not due to excessive speed.

Same—Street Accident—Evidence—Admissibility.

8. It was proper for defendant to show that, when first seen by the occupants of the automobile, the decedent's actions were such as to create the impression that she was waiting for a car, and was not about to cross a street intersection.

Same—Evidence—Avoiding Effect of Other Evidence—Admissibility.

9. It having been shown that after the accident the machine proceeded to the dance to which defendant's sons and their guests were going, and that defendant's son who drove the car there danced several times, evidence that his other son had inquired at decedent's house and was informed that her injury was not serious was admissible to avoid the prejudice which might arise from the imputation of heartlessness or undue haste.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION by Abraham G. Lewis, as administrator of the estate of Rose Amelia Lewis, deceased, against Charles Steele. Judgment for plaintiff. Defendant appeals. Judgment and order denying a new trial reversed and cause remanded for new trial.

*Mr. E. B. Howell* and *Mr. William Meyer,* for Appellant, submitted a brief and argued the cause orally.

The appellant contends that he is not liable for any tort committed by his minor son during the appellant's absence unconnected with his business, and without his authority or approval. (See *Herndobler* v. *Rippen,* 75 Or. 22, 146 Pac. 140; *Tifft* v. *Tifft,* 4 Denio (N. Y.), 175; *Kumba* v. *Gilham,* 103 Wis. 312, 79 N. W. 325; *Maddox* v. *Brown,* 71 Me. 432, 36 Am. Rep. 336; *Smith* v. *Davenport,* 45 Kan. 423, 23 Am. St. Rep. 737, 11 L. R. A. 429, 25 Pac. 851; *Paul* v. *Hummel,* 43 Mo. 119, 97 Am. Dec. 381; *Schlossberg* v. *Lahr,* 60 How. Pr. (N. Y.) 450; *Evers* v. *Krouse,* 70 N. J. L. 653, 66 L. R. A. 592, 58 Atl. 181; *Paulin* v. *Howser,* 63 Ill. 312; *Chandler* v. *Deaton,* 37 Tex. 406; *Klapproth* v. *Smith* (Tex. Civ.), 144 S. W. 688; *Bard* v. *Yohn,* 26 Pa. St. 482.)

"The automobile is not necessarily a dangerous device. It is an ordinary vehicle of pleasure and business. It is no more dangerous *per se* than a team of horses and a carriage, or a gun, or a sail boat, or a motor launch." (*Cunningham* v. *Castle,* 127 App. Div. 580, 111 N. Y. Supp. 1057; *Jones* v. *Hoge,* 47 Wash. 663, 125 Am. St. Rep. 915, 14 L. R. A. (n. s.) 216, 92 Pac. 433; 28 Cyc. 25; *Daily* v. *Maxwell,* 152 Mo. App. 415, 133 S. W. 351; *Vincent* v. *Crandall & Godley Co.,* 131 App. Div. 200, 115 N. Y. Supp. 600; Berry on Automobiles, sec. 20; *Harris* v. *Cameron,* 81 Wis. 239, 29 Am. St. Rep. 891, 51 N. W. 437.)

Since the automobile is an innocent instrument in itself, to be classed in the same category with the family horse, the family bicycle or motor boat, and since Ralph Steele was thoroughly skilled in its use, the question of defendant's liability is narrowed down to the single issue of whether Ralph was acting as the servant of his father at the time of the accident. Only upon the affirmative of this question can this action be maintained. The doctrine that the use of the thing bought for pleasure is the business of the owner and, when an accident occurs in its use, the doctrine of *respondeat superior* can be invoked, is absurd, even though the courts of Oklahoma (*McNeal* v. *McKain,* 33 Okl. 449, 41 L. R. A. (n. s.) 775, 126 Pac. 742) and Washington (*Birch* v. *Abercrombie,* 74 Wash. 486, 50 L. R. A. (n. s.) 59, 133 Pac. 1020) have seen fit to follow it. The doctrine is unsound, in that it looks to the motive or intent with which the owner has purchased the automobile rather than to the use made of it, for the purpose of defining the scope of his liability. (*Bard* v. *Yohn,* 26 Pa. St. 482; *Parker* v. *Wilson,* 179 Ala. 361, 43 L. R. A. (n. s.) 87, 60 South. 150; *Roberts* v. *Schanz,* 83 Misc. Rep. 139, 144 N. Y. Supp. 824; *Maher* v. *Benedict,* 123 App. Div. 579, 108 N. Y. Supp. 228; *Doran* v. *Thomsen,* 76 N. J. Law, 754, 131 Am. St. Rep. 677, 19 L. R. A. (n. s.) 335, 71 Atl. 296.)

There are many cases holding that the owner of an automobile is not liable for any accident that occurs when his machine is

taken out by his servant or his son without his knowledge and contrary to his orders. The question may arise, Does the owner become liable when he lends the car to a person entirely competent to drive it, whether chauffeur, son or other person, to use on an enterprise or venture in which the owner has no interest? Following the analogy of other cases there is only one answer to this question, and that is that the owner is not liable. In each case inquiry should be made, not as to whether the owner consented or did not consent to the use, but as to the nature of the use and the extent, if any, to which the business of the owner was served by such use. (See *Clark* v. *Buckmobile Co.*, 107 App. Div. 120, 94 N. Y. Supp. 771; *Douglass* v. *Hewson*, 142 App. Div. 166, 127 N. Y. Supp. 220; *Ware* v. *Barataria & L. Canal Co.*, 15 La. 169, 35 Am. Dec. 189, 194; *Patterson* v. *Kates*, 152 Fed. 481; *Lewis* v. *Seattle Taxicab Co.*, 72 Wash. 320, 130 Pac. 341; *Slater* v. *Advance Thresher Co.*, 97 Minn. 305, 5 L. R. A. (n. s.) 598, 107 N. W. 133; *Evans* v. *A. L. Dyke Automobile Supply Co.*, 121 Mo. App. 266, 101 S. W. 1132; *Lotz* v. *Hanlon*, 217 Pa. St. 339, 118 Am. St. Rep. 922, 10 Ann. Cas. 731, 10 L. R. A. (n. s.) 202, 66 Atl. 525; *Lewis* v. *Amorous*, 3 Ga. App. 50, 59 S. E. 338; *Jones* v. *Hoge*, 47 Wash. 663, 125 Am. St. Rep. 915, 14 L. R. A. (n. s.) 216, 92 Pac. 433; *File* v. *Unger*, 27 Ont. App. Rep. 468.)

*Mr. Jesse B. Roote* and *Mr. J. E. Healy*, for Respondent, submitted a brief and argued the cause orally.

We do not contend that an automobile is a dangerous instrumentality, neither do we admit that it is always a harmless one; whether it is or not is a question largely dependent upon the manner in which the particular vehicle is driven. As stated in *Colborne* v. *Detroit United Ry.*, 177 Mich. 139, 143 N. W. 32, and as shown by the evidence herein, it may be a veritable car of Juggernaut.

We do not admit that the doctrine of master and servant as applied to Ralph and Charles Steele is in any manner a new one, or that there is anything of new growth, or of judge-made

law, characterizing it. As shown in the case of *McNeal* v. *Mc-Kain,* 33 Okl. 449, 41 L. R. A. (n. s.) 775, 126 Pac. 742, and in the case of *Lashbrook* v. *Patten,* 1 Duv. (62 Ky.) 316, 317, therein cited,.the only new thing that the courts have done is to apply old and well-settled ideas to new and modern conditions. (See *Birch* v. *Abercrombie,* 74 Wash. 486, 50 L. R. A. (n. s.) 59, 133 Pac. 1020.) *Doran* v. *Thomsen,* stands alone, against the great weight of authority upon this point. *Doran* v. *Thomsen* is incorrectly decided, we submit; but that case is in no way opposed to the facts herein in evidence. Under the conditions here presented, the plaintiff would have recovered in *Doran* v. *Thomsen,* in accord with the rules there laid down. A use subject to the control of the master and connected with his affairs is the test of *Doran* v. *Thomsen.*

The fact that the machine was owned by the defendant and that it was being driven with the express or implied consent of the defendant is enough to create a presumption that the person in charge was the defendant's servant. (1 Shearman and Redfield on·Negligence, secs. 158,·159; *Fleishman* v. *Polar Wave Ice & Fuel Co.,* 148 Mo. App. 117, 127 S. W. 660; *Hornstein* v. *Southern Boulevard R. Co.,* 79 Misc. Rep. 34, 138 N. Y. Supp. 1080.) "The burden was thus cast upon the appellants to overcome this presumption by competent evidence, and it was for the jury to say upon such evidence whether the burden has been sustained." (*Birch* v. *Abercrombie,* 74 Wash. 486, 50 L. R. A. (n. s.) 59, 133 Pac. 1020, 1021.) As was also the question of contributory negligence for the jury. (*Lewis* v. *National Cash Register Co.,* 84 N. J. L. 598, 87 Atl. 345; *Fox* v. *Great Atlantic etc. Tea Co.,* 84 N. J. L. 726, 87 Atl. 339; *Jessen* v. *J. L. Kesner Co.,* 159 App. Div. 898, 144 N. Y. Supp. 407; *Lewis* v. *Seattle Taxicab Co.,* 72 Wash. 320, 130 Pac. 341; *Blackwell* v. *Renwick,* 21 Cal. App. 131, 131 Pac. 94.)

MR. JUSTICE SANNER delivered the opinion of the court.

While crossing the intersection of Columbia (or Clark) and Park Streets, in the city of Butte, Rose Amelia Lewis was struck

by an automobile and killed. The machine belonged to the defendant, but was being driven by Ralph Steele, one of his minor sons, and was conveying his sons with a party of their friends to a high school dance at the Columbia Gardens. The accident occurred about 8:35 P. M., on June 5, 1913, and the complaint, which is by the administrator of the estate of Rose Amelia Lewis, charges that her death was due to negligence in the handling of the machine, and seeks to hold the defendant liable therefor under the doctrine of *respondeat superior.*

The defendant answered, admitting the accident, but denying negligence, as well as all the allegations upon which his responsibility is sought to be based; and as a separate defense he submitted an elaborate plea the effect of which is to allege that there was no negligence, but, if there was, the plaintiff should not recover, because the injuries and death of Rose Amelia Lewis were due to her contributory negligence, the particulars of which are duly set forth. A demurrer to this plea as insufficient to constitute a defense was sustained.

Trial was to a jury. The evidence on the part of plaintiff tended to show that there was negligence in the handling of the machine, and that such negligence was the proximate cause of the accident. To establish the defendant's responsibility reliance was placed upon a deposition of defendant himself, the substance of which, so far as pertinent here, is: That he has two sons, Chester, then aged nineteen, and Ralph, then aged seventeen; that he bought the machine in May, 1912, to be used, and it was used, for the pleasure of himself and his family, and for his business when necessary; that it had been kept since September, 1912, in a garage adjoining his premises and built by him for this and other purposes, and to that garage each of his sons had a key; that his sons were taught by the salesman how to operate the machine, and "either one of them operated it generally"; that he sometimes operated the machine himself, but always in company with one or both of the boys, because he had not become sufficiently adept to trust himself with it alone. "I let the boys do the operating of it at all times, especially

52 Mont.—20

when I went out with my family and on other occasions. In fact, the boys operated the machine a great deal without me being present in the machine, and I knew that. I did not know they operated it for their own uses, purposes and pleasure whenever they chose to do so. They usually consulted me if they wanted to go out with it or do anything with it, * * * and that was the case on the 5th day of June, 1913. They had consulted with me about the use of it, and I had given them the machine to use on that day, and upon that occasion. At that particular time they were to take a party of their own friends out to the Gardens, and it had been arranged that Chester was to bring the machine back and take my wife and I out to the Gardens after they had taken their friends out there. * * * I did not give this permission to both of the boys, to both Ralph and Chester, but gave it to Chester several days before with the understanding that they were to take a party of their own friends out to the Gardens. * * * There was to be a dance at the Gardens called the 'Junior Prom' of the high school, which was the occasion of speaking of this in advance. Both of these boys were not high school boys, but one of them, Ralph, was in the high school. Q. * * * Was it the desire of yourself and your family to participate in this dance at the Gardens or be present at it in consequence of the fact that Ralph was a member of the high school; that is, that he was attending the high school? A. Yes. * * * I never kept track of how often Ralph ran this machine in my presence; it was quite often. The boys ran the machine indifferently, at one time one, and at one time the other. * * * I did not see the machine leaving my house on June 5, 1913, and did not know at that time which of the boys was running the machine. I knew and had consented to either or both of the boys running the machine at any time. * * * I do know that Chester was to run the machine back. It was spoken of that Chester should run it back on that evening, and the matter of Ralph running it out was spoken of, too, but not to me. I had told Chester that he could run the machine, but Mrs. Steele got

Chester to consent to Ralph running the machine to the Gardens. She subsequently informed me of this arrangement. My impression is it was after the machine left for the Gardens. Ralph was to run the machine on the outward trip to Columbia Gardens, and Chester back, to bring myself and my wife out. * * * I did not employ any other chauffeur or person to operate or run this automobile than the two persons that we have mentioned. * * * I did not consider those persons employed. * * * I consider an employee is one you .pay money to.''

The evidence on the part of the defendant tended to rebut that of the plaintiff upon the issue of negligence, and also, to some slight degree, that upon the issue of responsibility. In connection with the latter, however, the testimony of Chester Steele makes it perfectly clear that the machine left, with its load, from defendant's home, and that Ralph was then driving.

The verdict awarded the plaintiff $10,000, and defendant's motion for new trial was denied on the condition—which was accepted—that the plaintiff remit $4,000. Judgment being entered for $6,000 and costs, the defendant has appealed therefrom, as well as from the order denying him a new trial.

Sixty-two alleged errors are assigned, but the principal questions presented are whether the demurrer to the defendant's plea of contributory negligence was properly sustained, and whether there was sufficient evidence to establish *prima facie* the responsibility of defendant.

1. The answer to the first of these questions may be found in [1] *Day* v. *Kelly*, 50 Mont. 306, 311, 146 Pac. 930, 931, wherein this court, holding that a plea of contributory negligence may be coupled with a denial of primary negligence, said: ''The plea of contributory negligence, when coupled with a denial, is always hypothetical in effect, if not in form, and amounts to no more than this: I deny absolutely that I am guilty of negligence; but assuming, without admitting it, that some act of mine was negligent in character and proximately contributed to plaintiff's injury, nevertheless plaintiff's negligent acts

united with my act to produce the injury, and without which the injury would not have occurred." Again, in *Nelson* v. *Northern Pacific Ry. Co.*, 50 Mont. 516, 531, 148 Pac. 388, 392; it was recognized that a plea of contributory negligence might be coupled with a denial of negligence, and the view expressed that when so made, the plea "involves merely a hypothetical admission, and does not in any measure relieve the plaintiff of the burden of proving negligence on the part of the defendant in some one or more of the particulars alleged in the complaint." This being so, the plea at bar, which does in express terms exactly what we have twice said its office is to do, cannot be deemed legally insufficient.

There is some insistence by the respondent that no prejudice [2] was occasioned by this ruling, because there was evidence suggesting contributory negligence, and instructions were given upon that subject. Counsel ignore the necessary legal effect of the ruling, which was to render inadmissible any evidence on contributory negligence considered as a defense; or, in other words, to take that question out of the case unless raised or suggested by the plaintiff's own proof. That it was raised incidentally, and that instructions upon the subject may have thereby been justified, does not cure the error in depriving the defendant of the right, from his point of view, to bring that matter into prominent relief as an affirmative defense to be supported by all the competent evidence he could muster, and to be considered by the jury as a positive and efficient element in the case. The suggestion that "the defendant took no position which admitted that his negligence, combined with the negligence of the deceased, caused the injury," is without value, because, in the light of the above decisions, he was never required to categorically acknowledge such negligence.

2. We premise our discussion of defendant's responsibility [3] with the observations that, as "a father is not liable merely because of the relation for the torts of his child, whether the same are negligent or willful" (1 Cooley on Torts, p. 180), and as an automobile can no longer be deemed inherently dangerous

(2 R. C. L. 1190), no responsibility of the defendant for the accident in question can be successfully asserted if the machine was taken without his knowledge or consent, or, if with his consent, it was taken for a purpose foreign to that for which it was kept and customarily used (*McFarlane* v. *Winters* (Utah), 155 Pac. 437; *Clark* v. *Buckmobile Co.*, 107 App. Div. 120, 94 N. Y. Supp. 771; *Maher* v. *Benedict*, 123 App. Div. 579, 108 N. Y. Supp. 228; *Reynolds* v. *Buck*, 127 Iowa, 601, 103 N. W. 946; *Premier Motor Mfg. Co.* v. *Tilford* (Ind. App.), 111 N. E. 645.) It is deducible from the evidence, however, that defendant's principal business, so far as it involved the use of the machine, [4, 5] was the pleasure of himself and his family, including his two boys, Chester and Ralph. In carrying on this business he relied upon them as drivers of the machine and exacted of them this service. They served "indifferently," first one, then the other, either of them being authorized to drive it whenever in the pursuit of family pleasure it should be driven. On the occasion in question it had not been taken surreptitiously, but was being used in the business for which it was bought and maintained, to-wit, the family pleasure; so much so that after depositing the guests it was to return to the home and complete the entire transaction by conveying the defendant and his wife to the same dance. It had not been specifically committed to Chester, but to "the boys," and the driving of it at the time by Ralph was not against the defendant's wishes, but was with his implied, if not express, assent. Whether these circumstances make a case for the application of *respondeat superior* depends upon considerations entirely beside the fact that the device employed was an automobile. That instrument is now too well established to be singled out for judicial preference or animadversion. It has taken its place among the common methods of transportation, and no good reason occurs to us, in the absence of legislation, for denying to its use the same general rules of responsibility, direct and consequential, as are applicable to other common methods of transportation, having in mind, of course, its potentialities for harm as well as good. If, there-

fore, the defendant would be holden under the doctrine of *respondeat superior* had Mrs. Lewis been run over and killed by a team reasonably safe, but, under the same conditions as to purpose and authority as are here disclosed, incautiously driven by his son, then he is responsible in this case; otherwise not. That he would be responsible in the case supposed is reasonably well settled (*Lashbrook* v. *Patten*, 1 Duv. (Ky.) 316; *Schaefer* v. *Osterbrink*, 67 Wis. 495, 58 Am. Rep. 875, 30 N. W. 922; *Maddox* v. *Brown*, 71 Me. 432, 36 Am. Rep. 336; *Howe* v. *Newmarch*, 12 Allen (Mass.), 49; *Jennings* v. *Schwab*, 64 Mo. App. 13; *Broadstreet* v. *Hall*, 168 Ind. 192, 120 Am. St. Rep. 356, 10 L. R. A. (n. s.) 933, 80 N. E. 145; *Mulvehill* v. *Bates*, 31 Minn. 364, 47 Am. Rep. 796, 17 N. W. 959; *Shockley* v. *Shepherd*, 9 Houst. (Del.) 270, 32 Atl. 173); and there is little room to deny the same conclusion to cases like the present, since the owner of an automobile is not to be absolved, any more than he is to be held, merely because a machine instead of a team was the instrument of harm. (*McNeal* v. *McKain*, 33 Okl. 449, 41 L. R. A. (n. s.) 775, 126 Pac. 742; *Birch* v. *Abercrombie*, 74 Wash. 486, 50 L. R. A. (n. s.) 59, 133 Pac. 1020; *Kayser* v. *Van Nest*, 125 Minn. 277, 51 L. R. A. (n. s.) 970, 146 N. W. 1091; *Daily* v. *Maxwell*, 152 Mo. App. 415, 133 S. W. 351; *Smith* v. *Jordan*, 211 Mass. 269, 97 N. E. 761; *Stowe* v. *Morris*, 147 Ky. 386, 39 L. R. A. (n. s.) 224, 144 S. W. 52; *Ploetz* v. *Holt*, 124 Minn. 169, 144 N. W. 745; *Hays* v. *Hogan*, 180 Mo. App. 237, 165° S. W. 1125; *Geiss* v. *Twin City Taxicab Co.*, 120 Minn. 368, 45 L. R. A. (n. s.) 382, 139 N. W. 611.)

Defendant cited many cases to support his contention that no responsibility exists. These cases are, for the most part, against him; for they proceed upon the theory, more or less justified, that the evidence showed no service or agency, and they either tacitly or expressly admit the principle that, had agency or service been shown, liability would attach. The leading case in point against the conclusion here reached is *Doran* v. *Thomsen*, 76 N. J. Law, 754, 131 Am. St. Rep. 677, 19 L. R. A. (n. s.) 335, 71 Atl. 296. The criticism of this decision by the

supreme court of Washington is, to our mind, so apt and so clearly expresses the fundamental considerations involved that we subjoin it as part of our declaration of the law in this state upon the subject: "The New Jersey case, *Doran* v. *Thomsen* (*supra*), is not distinguishable on the facts from the case before us. The father owned the automobile, kept it on his premises, and the daughter used it with his knowledge and consent at her pleasure. While heartily subscribing to the view there expressed 'that the mere fact of the relationship of parent and child would not make the child the servant of the defendant,' we think the opinion unsound in that it ignores the agency induced by the fact, independent of that relationship, that the daughter was using the machine for the very purpose for which the father owned it, kept it, and intended that it should be used. It was being used in furtherance of the very purpose of his ownership and by one of the persons by whom he intended that purpose should be carried out. It was in every just sense being used in his business by his agent. There is no possible distinction, either in sound reason, sound morals, or sound law, between her legal relation to the parent and that of a chauffeur employed by him for the same purpose. The fact that the agency was not a business agency nor the service a remunerative service has no bearing upon the question of liability.  \*  \*  \* In running his vehicle she was carrying out the general purpose for which he owned it and kept it. No other element is essential to invoke the rule *respondeat superior*. We think that the instruction which is criticised in the *Doran Case* is in itself a complete answer to the opinion. It declared the use of the machine for the purpose for which it was owned, by the person authorized by the owner to so use it, a use in the owner's business. It seems too plain for cavil that a father who furnishes a vehicle for the customary conveyance of the members of his family makes their conveyance by that vehicle his affair, that is, his business, and any one driving the vehicle for that purpose with his consent, express or implied, whether a member of his

family or another, is his agent." (*Birch* **v.** *Abercrombie, supra.*)

3. Additional rulings of a procedural character other than as involved in the questions above discussed are assigned as error, some of which require notice.

Technically it was error, though not very substantial, to per-[6] mit Mrs. Barron to testify to the usual charge by Christian Science practitioners, in the absence of a showing that Mrs. Lewis was accustomed to make such charges.

Nor should the court have stricken Chester Steele's answer [7] to the effect that the appearance of Mrs. Lewis was so sudden the machine could not have been stopped in time to avoid striking her even if its speed had not exceeded four miles an hour; he was sufficiently qualified to speak, and the answer tended to show that the accident was not due to excessive speed, assuming that speed to have been eight or ten miles an hour, as claimed by the defendant.

We also think it was proper for the defendant to show, as he [8] attempted to do by Kiser, that, when first descried by the occupants of the automobile, Mrs. Lewis' actions were such as to create the impression that she was waiting for the westbound car, and would therefore have no occasion to cross the intersection of Park and Columbia Streets.

To avoid the prejudice which might arise from the imputation [9] of heartlessness or undue haste occasioned by the fact that the machine proceeded to the Columbia Gardens, and that Ralph Steele there danced once or twice, the defendant sought to show that inquiry had been made by Chester Steele at the house of Mrs. Lewis and was informed that her injuries were not serious. This, under the circumstances, should have been permitted, in our opinion. What Ralph did at the Gardens was wholly immaterial, but, having been shown, the defendant was entitled to offset its effect. The jury should have been directed, as requested by offered instruction No. 30a, to ignore it altogether.

As the record is presented, we find no merit in the other assignments. Many of them relate to evidence or instructions

touching contributory negligence, which, as a defense, was not in the case, and these doubtless will not recur.

The judgment and order appealed from are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.