ROBERT WEINER *vs.* J. KELSO MAIRS.

Hampden.    October 2, 1919. — November 26, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Agency,* Scope of employment. *Parent and Child. Evidence,* Presumptions and burden of proof.

Where at the trial of an action for damages resulting from negligence of a son in driving a motor vehicle of his father, the material evidence, if accepted by the jury as true, compelled the conclusion that, when the damage was done, the son was not acting as the agent or servant of the father and there was no affirmative evidence that he was so acting, and a verdict for the defendant was ordered, an exception of the plaintiff to such order should not be sustained merely because the jury might have been warranted in disbelieving a part or the whole of the evidence.

TORT for damage to a motor vehicle of the plaintiff which was run into by a motor vehicle owned by the defendant and operated by his son.    Writ dated December 12, 1917.

In the Superior Court the action was tried before *O'Connell,* J. The defendant testified that his son, David, was a student at the Wilbraham Academy; that the defendant came to Wilbraham in his motor vehicle, which was driven by a chauffeur, on the day of the collision, to attend a celebration of the school to be held on the following day; that they left Wilbraham for Springfield; that the defendant left his car at Clinton Hall, a hotel in Springfield, and that it remained at Clinton Hall until half past four o'clock that afternoon, when he gave it to his son with in-

structions to park it for the night in the Wilbraham Academy garage (which is in Wilbraham), and to be sure and get home in time for dinner, and not to take it out with the boys that night; that the son would have arrived at Wilbraham at five o'clock, and that he did not know until after the accident that the car was out that night about nine or half past nine o'clock.

The son testified that on the day of the accident he took his father into Springfield in the car; that he then drove it back to Wilbraham; that he arrived at Wilbraham Academy about fifteen minutes after four o'clock in the afternoon; that he then put the car up in the Wilbraham Academy garage; that he was to have dinner shortly and he put it up to go upstairs to change his clothes; that those were his father's instructions; that he then went in to get ready for supper and he had supper at six or a quarter before six o'clock that evening; that he attended some exercises of the school until half past seven o'clock; that he then took "some fellows" out for a ride about eight o'clock; that his father did not know he was taking out the car after eight o'clock; that they then went to the outskirts of Springfield; that at about nine o'clock they were on State Street, near Andrew Street; that it was a very rainy and slippery night; that he was about to turn around to go back to Wilbraham and had made the curve to return and came to a dead stop, after which the collision occurred; that the boys were still in the car; that he had often taken the family out for a ride, and had driven the car very often; that it was a block before he came to Andrew Street when he decided to turn at Andrew Street.

Arnold C. Barker, one of the son's companions, testified in cross-examination "that they conceived this plan to go out for a ride before they got out of the school at six o'clock, when they found the machine out front; that the plans for the ride were laid just before supper; that he had seen the car out in front of the school just before supper; that the supper took place at six o'clock; that Mairs was not in the car when he saw the car just before supper; that the plans for the ride were made while they were waiting for the doors of the dining room to open; that having seen the car standing out in front of the school they thought it would be a good idea to go out for a ride after supper; that after supper there were some exercises, after which they came out of the hall

and stepped into the car; that they did not have to go to the garage to get the car, as it was standing beside the Methodist church, which is at one end of the school, where it had been standing."

At the close of the evidence, the judge ordered a verdict for the defendant and, at the request of the parties, reported the case to this court for determination, judgment to be entered for the defendant if the ordering of the verdict was right; otherwise, judgment to be entered for the plaintiff in the sum of $200.

The case was submitted on briefs.

*H. M. Ehrlich,* for the plaintiff.

*T. F. McGlynn,* for the defendant.

BRALEY, J. The report of the presiding judge, who ordered a verdict for the defendant, shows evidence on which the jury would have been warranted in finding that, while the plaintiff, using due care, was driving his automobile in the night time over a public way, it came into collision with the defendant's automobile through the negligence of the driver, the defendant's son, who, unaccompanied by his father, was operating the car. But, even if the defendant owned, and his son was using the car, the plaintiff, in order to recover, was obliged to introduce evidence from which the jury could find that the son acted as the father's servant. *Trombley* v. *Stevens-Duryea Co.* 206 Mass. 516. If the material evidence on this question as shown by the record was accepted by the jury as true, but one conclusion is possible, that the son without his father's knowledge was out on a "joy ride" or "frolic of his own." If, however, the evidence either wholly or partially could be disregarded, as the plaintiff's counsel urges in argument, there is no proof of liability. The defendant accordingly is entitled to judgment on the verdict.

*So ordered.*