Argued December 18, 1935; modified January 14; rehearing
denied February 11, 1936

# LEHL *v.* HULL ET AL.

(53 P. (2d) 48, 54 P. (2d) 290)

*Ronald Reilly* and *W. H. Morrison,* both of Portland (Maguire, Shields & Morrison and Delmas R. Richmond, all of Portland, on the brief), for appellants.

*Elton Watkins,* of Portland, for respondent.

KELLY, J. About 11:30 p. m., September 10, 1933, in the intersection of Williams avenue and East Mason street in the city of Portland, the automobile in which plaintiff was riding collided with an automobile owned by defendant, Stephen A. Hull. The car in which plaintiff was riding, a Pontiac, was being driven in an easterly direction by Dewey Bauer and the automobile owned by defendant, Stephen A. Hull, a Chrysler, was being driven in a northerly direction on Williams avenue by the defendant, Joseph A. Hull.

The first assignment predicates error upon the action of the trial court in denying the motion of defendant, Stephen A. Hull, for a directed verdict in favor of said defendant, Stephen A. Hull.

The testimony in behalf of defendants is the only testimony in the case on the subject of the alleged relationship of principal and agent between Stephen A. and Joseph A. Hull. This uncontradicted testimony discloses that defendant Joseph A. Hull is the son of the defendant, Stephen A. Hull. That on September 10, 1933, defendant, Joseph A. Hull, unsuccessfully attempted to reach his father by telephone to secure permission to use his father's automobile for the purpose of meeting an engagement for the evening. Without any express permission, said defendant, Joseph A. Hull, made use of and drove his father's car on the evening in question and was driving it when the collision occurred. At about 8 p. m. of the day in question, in company with Mr. George Heimrick and a young lady, defendant Joseph A. Hull drove to a residence,

within three blocks from the place of collision, where another young lady was stopping temporarily with her aunt. With these two young ladies and Heimrich as the other occupants of the car, defendant Joseph A. Hull drove to Nineteenth and Jefferson streets where they played golf until shortly after 10 p. m., after which the party went for a ride and continued riding without stopping any place until the collision occurred. Defendant, Joseph A. Hull, and two of the other occupants of the car testified that, as they were approaching the place of the accident, they were looking for the residence at which the second young lady was temporarily stopping; and, for that reason, were driving slowly when the accident happened.

Defendant, Joseph A. Hull, testified that he had driven his father's car several times. That on some of the trips, his father did not accompany him; while, on others, the trips were made by the father for the purposes of the father's business, the son acting as the driver at the request of the father.

We are unable to find anything in the record tending to show that, on the occasion in suit, Joseph A. Hull was acting as the agent of Stephen A. Hull, or within the scope of any such alleged agency. There is nothing in the record from which it reasonably can be inferred that Stephen A. Hull had any interest in the mission or enterprise of his son, or had any knowledge of it.

In a comparatively early automobile case, this court quoted from a New York case as follows:

" 'Liability can not be cast upon the defendant because he owned the car, or because he permitted his son to drive the car whenever he wished to do so. * * * Liability arises from the relationship of master and servant, and it must be determined by the inquiry

whether the driving at the time was within the authority of the master, in the execution of his orders, or in the doing of his work'—quoting from Cavanaugh v. Dinsmore, 12 Hun. 468: 'It is well settled that the master is not liable for injuries sustained by the negligence of his servant while engaged in an unauthorized act, beyond the scope and duty of his employment * * * although the servant is using the implements or property of the master.' " *Smith v. Burns,* 71 Or. 133, 136 (135 P. 200, 142 P. 352, L. R. A. 1915A, 1130, Ann. Cas. 1916A, 666), quoting from *Maher v. Benedict,* 123 App. Div. 579 (108 N. Y. Supp. 228).

■ If reasonable minds might differ as to the inference which could be drawn from the testimony, then the question of alleged agency should be submitted to the jury (*Judson v. Bee Hive Auto Service Co.,* 136 Or. 1 (294 P. 588, 297 P. 1050, 74 A. L. R. 944); but we think that no such difference of opinion could arise from the uncontradicted testimony in the case at bar.

■ The family purpose doctrine is not applicable here. There is nothing in the record tending to prove that Mr. Stephen A. Hull had or maintained any family. There is uncontradicted testimony that Joseph A. Hull did not live with his father.

■ The relationship of parent and son does not, of itself alone, establish the agency of the son for the parent so as to make the latter liable for the acts of the son while driving his parent's automobile: *Erlich v. Heis,* 193 Ala. 669 (69 So. 530); *Gardiner v. Solomon,* 200 Ala. 115 (75 So. 621, L. R. A. 1917F, 380); *Rowland v. Spalti,* 196 Iowa, 208 (194 N. W. 90); *Weiner v. Mairs,* 234 Mass. 156 (125 N. E. 149); *Woods v. Clements,* 113 Miss. 720 (74 So. 422, L. R. A. 1917E, 357); *Lewis v. Steele,* 52 Mont. 300 (157 P. 575); *Clawson v. Schroeder,* 63 Mont. 488 (208 P. 924); *Zurn v. Whatley,* 213 Wis. 365 (251 N. W. 435).

The motion of defendant, Stephen A. Hull, for a directed verdict in his favor should have been sustained.

Defendants also urge that error was committed by the trial court in requiring the jury to retire for further deliberation after it developed upon polling the jury that only eight jurors assented to the verdict which had been treated as a sealed verdict.

The parties had stipulated that a sealed verdict might be returned. On Friday evening the jury separated after a document in the form of a verdict for plaintiff had been signed by the foreman and handed to the bailiff. On the following Monday morning, when the jury appeared in court to make return of the verdict, a poll of the jury was had, and four jurors indicated that they had not agreed to the verdict thus returned.

The court thereupon ordered the jury to retire for further consideration. Later, the jury returned a verdict for the plaintiff against both defendants in the sum of $25,000. A poll was had and each juror declared his or her assent to that verdict. At the instance of defendants, each juror was asked whether, during the course of the trial, or since their dispersal from the jury room on Friday night, they had discussed the facts of this case with anybody, or permitted any one to discuss the facts with them. To this each juror answered in the negative. The verdict was then received by the court.

In one jurisdiction, it is held to constitute error for the court to direct the jury to retire for further deliberation where, after the jurors have separated following the delivery of a supposed sealed verdict to the officer in charge of the jury and when return thereof to the court is attempted, it develops upon polling the jury that an insufficient number of jurors

assent to the verdict: *Kramer v. Kister,* 187 Pa. 227 (40 Atl. 1008, 44 L. R. A. 432).

In other jurisdictions, such a course has been approved: *Coughlin v. Weeks,* 75 Wash. 568 (135 P. 649); *State ex rel. v. Waltermath,* 162 Wis. 602 (156 N. W. 946); *Jessup v. Chicago & N. W. Ry. Co.,* 82 Iowa, 243 (48 N. W. 77); *Douglass v. Tousey,* 2 Wend. (N. Y.) 352 20 Am. Dec. 616); *Bunn v. Hoyt,* 3 John. (N. Y.) 255; *Warner v. New York Cent. R. R. Co.,* 52 N. Y. (7 Sickels) 438 (11 Am. Rep. 724); *Lagrone v. Timmerman,* 46 S. C. 372 (24 S. E. 290); *Devereux v. Champion Cotton Press Co.,* 14 S. C. 396; *Johnson v. Oakes,* 80 Ga. 722 (6 S. E. 274).

The similarity in the provisions, pertinent to this question, of the statutes of Washington to those of Oregon, when the opinion in the case of *Coughlin v. Weeks,* supra, was rendered, makes that opinion most persuasive. We quote therefrom:

"In the last case cited, [Pehlman v. State, 115 Ind. 131, 17 N. E. 270,] it is said: 'By permitting a jury to separate after they have agreed upon a verdict, and before it is returned into court, nothing is waived, either as to the power or duty of the court to have the verdict amended, if it shall prove to be a defective verdict, or as to the right of either party to object to the reception of an incomplete or an improper verdict. Where a jury reassemble after an authorized separation, whether before or after agreeing upon a verdict, they resume at the point at which they left off, and proceed with the business before them as if no separation had taken place. Consequently, when a jury have been allowed to separate, and return a sealed verdict, and upon reassembling, the verdict is found to be defective, the jury may be required to retire to their room and make the proper amendment or correction.' This general rule, however, does not appear to cover the facts in the present case. When the verdict was first presented to the court, the poll of the jury showed that

it did not have the affirmance of the requisite number of jurors. It cannot then be said to be a verdict which was defective. It was in fact no verdict. By statute in this state, when it appears upon the poll of a jury that ten of the jurors do not answer in the affirmative, it is the duty of the court to cause them to return to the jury room for further deliberation. By Rem. & Bal. Code, § 359 (P. C. 81 § 629), it is provided: 'When the verdict is returned into court either party may poll the jury, and if ten of the jurors answer that it is the verdict said verdict shall stand. In case ten of the jurors do not answer in the affirmative the jury shall be returned to the jury room for further deliberation.'

*     *     *     *     *

"In Kramer v. Kister, 187 Pa. 227, 40 Atl. 1008, 44 L. R. A. 432, it is held that where a jury seals a verdict and separates and subsequently, when the jury is polled in open court one of the jurors dissents, the trial court must treat the proceeding as a mistrial and, instead of sending the jurors out for further deliberation, discharge them. From that case, however, it does not appear that there was then in force in the state of Pennsylvania any statute such as the one above quoted, which made it the duty of the trial court to direct the jury to return to the jury room for further deliberation. Even in the absence of such a statute, the principle stated in that case does not appear to us to be founded upon any good reason. There was not there, and neither is there here, any suggestion of wrongdoing from any source that would taint the verdict. To hold that the simple fact that, after the jury have separated and reassembled, and upon a poll it appears that the legal number of jurors do not support the verdict, entirely vitiates it, is to give expression to an extreme doctrine. We think the correct rule is that where the jury have been permitted to separate after agreeing upon their verdict, and have reassembled in open court for the purpose of presenting the same, and upon a poll being had it appears that their verdict does not have the support of the requisite number of jurors, the jury

should be returned to the jury room for further deliberation.''

Section 2-319, Oregon Code, provides:

''When a verdict is given, and before it is filed, the jury may be polled on request of either party, for which purpose each shall be asked whether it be his verdict; if any juror answer in the negative, the jury shall be sent out for further deliberation. If the verdict be informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may be again sent out.''

Section 2-320, ibid., provides:

''When the verdict is given, and is such as the court may receive, and if no juror disagree, or the jury be not again sent out, the clerk shall file the verdict. The verdict is then complete, and the jury shall be discharged from the case. The verdict shall be in writing, and under the direction of the court shall be substantially entered in the journal as of the day's proceedings on which it was given.''

■ These provisions of the statute must be construed in the light of section 5 of Article VII of the constitution and section 11 of Article I thereof. When so construed, in reference to the trial of a civil case, the clause in section 2-319, reading ''if any juror answer in the negative'', must be understood as meaning if more than one-fourth of the members of the jury answer in the negative. In reference to a criminal case, except where the verdict is guilty of murder in the first degree, such clause should be understood to mean if more than two members of the jury answer in the negative. A similar construction should be given to section 2-320.

It will be observed that, under the statute, it is made the duty of the trial court to send the jury out for further deliberation when there is an insufficient

number of jurors, who concur in the verdict; and that in case the verdict is informal or insufficient, the court in its discretion may send the jury out for further deliberation.

It may be of interest to note that the statute of Washington, requiring the jury to be kept together, after the submission of the case, until they have agreed upon a verdict (title 81, section 605, Pierce's Washington Code 1912) is almost word for word in the language of the statute of Oregon (section 2-310, Oregon Code 1930), except that the Washington code does not have the somnolence-producing provision that before any officer takes charge of a jury, that particular section shall be read to him. Likewise, title 81, section 625, Pierce's Washington Code 1912, is almost word for word the same as section 2-320, Oregon Code 1930.

██ The doctrine of *Nickelson v. Smith,* 15 Or. 200 (14 P. 40), is that it is error to allow a jury to separate without the consent of the parties after the submission of the case and before they have agreed upon a verdict. In that case, it is expressly held that the court could have sent the jury out for further deliberation. In the case at bar, the parties stipulated that the jury might separate when they had agreed upon a verdict. The weight of authority is to the effect that such a stipulation constitutes a waiver of the provision of the statute requiring the jury to be kept together even though it subsequently developes that no valid verdict has been agreed upon. We adopt this principle although it must not be understood as relieving the jury of the duty of refraining from any discussion of the case outside of the jury room, or of subjecting themselves to any ulterior influence before the verdict is finally received by the court.

We think the better reasoning and the weight of authority sustains the course taken by the learned trial judge in directing the jury to retire for further deliberation.

■ When the jury retired the second time for deliberation, the form of verdict for defendants did not accompany them, nor did the pleadings and exhibits in the case. This is urged as ground for reversal.

In directing the jury to retire for further deliberation, the trial judge said:

"I think you better repair to your jury room and reconsider this matter. Take both verdicts with you."

We can not agree with the assertion of defendants, made and repeated on oral argument, that the jury could have construed such a direction only as indicating that a verdict for the plaintiff should be returned; but, on the contrary, we think that it was plainly a direction to consider both forms of verdict.

For a trial court to say to a jury "take both verdicts with you", could have no other meaning than that the jury should consider both sides of the controversy. When we bear in mind that, when they first retired for deliberation, this jury had taken the pleadings, the exhibits and both forms of verdict with them, and had had an opportunity to examine them, read them, discuss them and consider all phases of the case in connection with and relation to all those papers and documents, it is not reasonable to think that they were not aware that, upon request, all of those documents would be returned to them at once.

In *Grant v. Hallam,* 129 Or. 321 (276 P. 687), it was urged that because the complaint contained a charge of duress, which was wholly unproven, the court should not have permitted the complaint to go to the jury. This court held that such a contention was untenable. Noth-

ing is said or considered there as tc the effect of a short reconsideration by the jury without the pleadings, exhibits or unsigned forms of verdict.

The judgment of the circuit court is reversed as to defendant, Stephen A. Hull, and affirmed as to defendant, Joseph A. Hull; and the cause is remanded with directions to enter an order of dismissal as to said defendant, Stephen A. Hull.

CAMPBELL, C. J., and ROSSMAN and BELT, JJ., concur.

Petition for rehearing denied February 11, 1936

## ON PETITION FOR REHEARING
(54 P. (2d) 290)

KELLY, J. In a petition by plaintiff for rehearing, six grounds are assigned for challenging the following statements in the original opinion:

(1) ''The testimony in behalf of defendants is the only testimony in the case on the subject of the alleged relationship of principal and agent between Stephen A. and Joseph A. Hull.''

(2) ''There is nothing in the record from which it reasonably can be inferred that Stephen A. Hull had any interest in the mission or enterprise of his son, or had any knowledge of it.''

Those six grounds of challenge are:

(1) Conduct and demeanor of witnesses not portrayed on printed page.

(2) Use of the car on the day of the collision by defendant, Joseph A. Hull.

(3) Appearance in court at the trial by both defendants in person.

(4) Failure of Stephen A. Hull to testify.

(5) Absence of testimony that Stephen A. Hull had given instructions against use of the car by his son.

(6) Use of the car by the son on other occasions.

As to the first of the above grounds, it is conceded that the record before us does not reflect the conduct and demeanor of witnesses. That fact, however, does not relieve us from the necessity of being guided by the record.

■ As to the second ground, the doctrine of the case of *Judson v. Bee Hive Auto Service Co.*, 136 Or. 1, 5 (294 P. 588, 297 P. 1050, 74 A. L. R. 944), is that the use of the car by one other than its owner creates an inference of agency on the part of the user for the owner; but when the actual relationship is disclosed by uncontradicted testimony and from the entire record no reasonable deduction of agency can be made, the inference of agency is without effect.

■ When it is remembered that the mission of the son was to take a young man and two young ladies to the golf links for an evening's entertainment and that the son's effort to contact his father in order to secure the father's permission to so use the car was fruitless, the conclusion is inescapable that the father had no interest whatever in the son's enterprise upon that evening.

■ The third and fourth grounds of challenge must be considered together, namely, that defendant, Stephen A. Hull, was personally present at the trial and did not testify, hence, his silence is deemed to be an admission against him. There was no testimony tending to show agency on the part of his son. The only testimony on the subject was to the contrary. His silence could not be construed to be an admission of testimony not given.

The case of *Bly v. Travelers' Insurance Co.*, 142 Or. 523 (20 P. (2d) 1089), cited by plaintiff, comments upon the failure of defendant to introduce any testimony on a given point, not the failure of any individual

defendant to testify when other testimony on that point has been introduced and has not been contradicted.

The case of *Wimer v. Smith,* 22 Or. 469 (30 P. 416), is one wherein the testimony, with reference to an alleged conversation, was conflicting and the failure to produce the testimony of a person, who was said to have been present at such conversation, is given consideration. In the case at bar, the testimony is not conflicting on the question of the son's alleged agency.

In *Schreyer v. Turner Flouring Mills Co.,* 29 Or. 1 (43 P. 719), cited by plaintiff, the defendant failed to produce certain original documents. We quote from the opinion:

"The defendant's failure or refusal to produce the documents called for by the notice cannot be considered as evidence of the truth of what plaintiff claims he would be able to prove by them.", etc.

In *Williams v. Commercial National Bank,* 49 Or. 492 (90 P. 1012, 91 P. 443, 11 L. R. A. (N. S.) 857), it was held that where the pleadings and proof question the good faith of a party and such party withholds proof exclusively within its control or fails to produce it on demand, the law puts an interpretation upon such conduct most unfavorable to such party. In the case at bar, there was no proof challenging the testimony introduced by defendants on the point under consideration. The plaintiff could have called Stephen A. Hull to the witness stand, hence, his testimony was not exclusively within said defendant's control.

We still think that in the case at bar as in the case of *Caldwell v. Hoskins,* 94 Or. 567 (186 P. 50), cited by plaintiff, there was no wilful suppression of testimony by defendant Stephen A. Hull.

██ The fifth ground seems to distinguish between the case of an adult son living apart from his parents, and any other adult person. It certainly can not be said that one sought to be charged as principal for another must introduce testimony of an express refusal to enter into such a relation. It would be a strange principle to say that because the owner of a car had not refused to employ another person as his agent, such other person could incur liability binding upon the owner by the use of the owner's automobile on a mission foreign to the interests of the owner and without his knowledge or consent. The relationship of father and son, when, as in this case, the son is an adult and not a member of the father's household, does not create agency on the part of the son for the father.

The sixth ground implies that the use of the car by the son on former occasions constitutes a basis for inferring either that the mission of the son on the evening of the accident was not as he said it was, or that some interest of the father was conserved in carrying out such an enterprise. Not even conjecture or speculation could divine any purpose or errand beneficial to or in the interest of the father in respect to such an enterprise; and there is not a suggestion in the records that the son went anywhere or did anything with the automobile on that occasion other than as he testified.

It is also urged that the doctrine heretofore announced by this court is not in harmony with the holding that the relationship of father and son does not ipso facto establish agency of the son for the father. No authorities, however, are cited thereon.

*Davis v. Underdahl,* 140 Or. 242 (13 P. (2d) 362), is cited as being out of harmony with the doctrine of the case at bar. There, testimony was introduced tend-

ing to show that the driver of the car was working part time for the owner thereof. As stated in the opinion:

". . . instead of the inference or presumption arising by virtue of the ownership of the car having been overcome, there is other testimony tending to show that the driver, David Moore, was the agent of defendant."

In *Purdin v. Richardson,* 148 Or. 68, 70 (34 P. (2d) 929), there was evidence that the driver just took the car when he wanted it and that was all there was to it; there was never any question asked. No such testimony occurs in the case at bar.

In *Millar v. Semler,* 137 Or. 610 (2 P. (2d) 233, 3 P. (2d) 987), the defendant introduced no testimony whatever. His sixteen-year old son was the driver of the car. After referring to the rule that proof of ownership of an automobile negligently operated and causing injury makes a prima facie case against the owner and is prima facie evidence that the person operating the automobile was the agent or servant of the owner and was operating the same with his consent, it is stated in that case:

"When such proof was offered, the duty devolved upon the owner to go forward with his own testimony and show, if true, that the driver was not acting for him or under his authority. That duty, in the instant case, the defendant refused to perform."

In the case at bar, the adult son testified in that regard disclosing that the relation of principal and agent did not obtain.

In *West v. Kern,* 88 Or. 247 (171 P. 413, 1050, L. R. A. 1918D, 920), it is said:

"However, the prima facie case which is made out from the admission of ownership, is, in the instant case, supplemented by other evidence. . . . A complete statement of all the evidence would not serve any good

purpose. It is sufficient to say that we have carefully examined the entire transcript of the testimony and find that there are many facts which when construed together and with relation to each other form a chain of circumstances tending to show that the persons were driving the car in behalf of defendant and within the scope of their authority.''

There is no such chain of circumstances in the record of the case at bar.

In *Miller v. Service and Sales Inc.,* 149 Or. 11 (38 P. (2d) 955, 96 A. L. R. 628), it is said:

''Let us now consider the facts in the instant case to determine whether but one reasonable inference could be drawn therefrom, viz., that Erskine had borrowed the automobile and at the time of the accident was using it for his sole benefit and pleasure. We are not prepared to say that a reasonable-minded person might not consider it improbable that the sales company would take this new 12-cylinder, seven-passenger car off the floor and lend it to Erskine—who was not a prospective purchaser and had not talked about buying the car—to take his family to the coast. Ordinarily, high priced cars are not loaned for such trips unless there is some prospect of sale.''

*Sather v. Giaconi,* 110 Or. 433 (220 P. 740), involves the question of liability for damages by reason of the use of a fishing vessel together with the necessary fishing appliances and paraphernalia belonging to it, including what is generally known as a purse seine. The defendant admitted ownership thereof. We quote from the opinion:

''The ownership of the purse-seine fishing outfit having been admitted, it was competent to show that the defendant collected the proceeds of the catch. This was shown by his own cross-examination. It is true that he explains why he collected the money, that it was by authority of his lessees and that he was acting for

them in so doing; but that is not conclusive upon the jury. They had a right to infer from his apparent assumption of authority over the proceeds of the catch that he was the owner and in control of the vessel and the seine that caught the fish."

We have given this extensive review of the authorities cited by plaintiff, not because we failed to consider them when the original opinion was written but because it is suggested that a comment from the court during the oral argument caused plaintiff to understand that the point here discussed would be decided favorably to him, and, hence, at that time his argument thereon was withheld.

We adhere to the original opinion. The motion for a rehearing is denied.

---

BELT, J. (specially concurring). I concur with Mr. Justice KELLY, speaking for the court, in denying the petition for rehearing. The precise question is: Can the court, in the light of the record, say that the prima facie case of agency has been overcome as a matter of law? The "family purpose doctrine" has no application since it appears from the undisputed testimony that the adult son, who was the driver of the car, was living separate and apart from his father's family and, at the time of the accident, no guests of such family were being transported. No relation of employer and employee existed in the instant case. Of course, agency could not be predicated upon the mere fact that the driver was the son of the owner and that he had the express or implied consent of the owner to use the car. Liability of the owner is established by showing that, at the time of the accident, the car was being driven in furtherance of the owner's business. In the light of the

undisputed testimony no reasonable inference can be drawn that it was so driven. In fact, the evidence established beyond dispute that the car was being used by the son for his own use and enjoyment. The conclusion reached is not in conflict with prior decisions of this court when the facts are carefully considered.

The writer, during oral argument, stated that *Judson v. Bee Hive Auto Service Co.*, 136 Or. 1 (294 P. 588, 297 P. 1050, 74 A. L. R. 944), was based upon facts wholly dissimilar to those in the case at bar, and he still adheres to such opinion. However, the legal principles announced in the Judson case are controlling here.